N. M. McDANIEL et al. v. MONROE COUNTY.

Eastern Section.   March 23, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

Ira G. Sloan, of Madisonville, for appellant.

N. M. McDaniel, of Madisonville, Kramer & Kramer, of Maryville, for appellee.

FAW, P. J.   This is a suit brought in the chancery court of Monroe county by N. M. McDaniel and R. R. Kramer, attorneys at law, to obtain a judgment against Monroe county for $1000 as attorneys' fees for services rendered by complainants on behalf of defendant.

The chancery court decreed that complainants recover of Monroe county $1000 as prayed for in the bill, with costs, and from this decree the defendant Monroe county appealed to this court and has assigned errors here.

The facts which gave rise to this suit will be first stated.

At its regular session in 1925, the general assembly of this State passed two acts, applicable to Monroe county alone, which purported to change the method of assessing farms and farm homes for taxes for county purposes so that such property should not be assessed at its actual cash value (as provided by the general assessment laws of the State) but should be assessed upon an income-producing basis or according to its rental value.   These Acts were published as chapters 135 and 692 of the Private Acts of 1925.   Chapter 692 was merely supplementary to and was dependent upon chapter 135. (See Kefauver et al. v. Spurling, 154 Tenn., 613, 290 S. W. 14).

The record is not clear as to the action of the Equalization Board of Monroe County for the year of 1925 with respect to a compliance, or attempted compliance, with the provisions of the aforesaid statutes, and this is not material to the issues in this case.   However, as we understand the record, the assessments as certified by that board to the county court clerk of Monroe county purported to be made upon the basis of actual cash values as provided by the general assessment laws, but before the tax books were thus certified to the county court clerk, a "red check mark" had been placed opposite each piece or parcel of real property thereon which seemed to fall within the description of a farm or farm home as contemplated by the aforesaid Private Acts of 1925, chapters 135 and 692.

At the regular July term of the quarterly county court of Monroe county, on July 6, 1925, a "resolution" was adopted by said quarterly court as follows:

"Whereas the general assembly of Tennessee 1925 enacted the law which provides that all farm and farm homes in Monroe county, shall be assessed for county revenue at what the farms and farm homes are worth to farm on and to live in, determined by the renting power of said property, on a six per cent (6%) basis, said law being chapter 135 of the Private Acts of 1925.

"Whereas the Private Acts of the general assembly of 1925 in chapter 692 of said Acts, makes it the duty of the equalization board, expressly stated in said Acts, to deduct from the assessed value which is placed on the farm and farm homes for State revenue such an amount for the purpose of county revenue, as will, and does comply with the provision of the Acts in chapter 135.

"Whereas the county assessor and the county board of equalization have, in making the equalization designated each and every farm and farm home that comes under the provision of a deduction under the provisions of the law by a red check mark.

"Whereas on June 23, 1925, the Equalization Board of Monroe County voted twenty per cent (20%) reduction on the assessed value on the farm and farm homes to comply with the provision of the law of Acts of 1925, chapter 135 and chapter 692 of said Acts thus providing the 80% of the value placed on the farms and farm homes shall be the assessed value for county revenue.

"Therefore be it resolved and be it directed by this quarterly court that the county court clerk be directed to make out the tax books for the assessment of 1925 with 20% deduction on the farm and farm homes for county revenue—the farm and farm homes having been designated on the tax books by a red check mark on the assessment books by the side of the assessed value."

Thereafter, on July 13, 1925, the County Judge of Monroe county issued a "call" for a special session of the quarterly county court as follows:

"July 13, 1925.
"Dear Sir:

"Notice is hereby given that a special session of the county court of Monroe county is called to meet on the 20th day of July, 1925, at nine o'clock a. m. for the purpose of considering the raising of the tax rate for Monroe county and the further purpose of considering the resolution relative to Bond issue for the

McCroskey Highway. And any other matter that may properly come before the court.

"Yours truly,

"(Signed) C. J. Spurling, County Court Clerk.

"C. A. Kennedy, County Judge."

Pursuant to the aforesaid "call," the quarterly county court of Monroe county convened in special session on July 20, 1925, all of the fourteen members of the court being present, and, at that special session, the court adopted a "tax rate for the year of 1925," and transacted other business, including the adoption of the following resolution, viz.:

"Whereas the county and the county court are threatened with a lawsuit on account of the 20% reduction on farm lands ordered by county court on July 6, 1925.

"Therefore be it resolved that a committee of three consisting of the County Judge, C. A. Kennedy, James Axley and R. L. Boyd be and the same is hereby appointed to fight said suit in behalf of the county and the county court."

No lawsuit was brought directly against "the county and the county court" as anticipated by the county court, but, on or about September 15, 1925, R. C. Kefauver and twelve others, suing as resident citizens and taxpayers of Monroe county, filed their bill in the chancery court of Monroe county against C. J. Spurling, county court clerk of Monroe county, alleging in substance, that chapters 135 and 692 of the Private Acts of 1925 were unconstitutional and void, that the quarterly county court of Monroe county had adopted a resolution at its regular July Term, 1925 (which resolution we have hereinbefore copied) directing the county court clerk to "make out the tax books for the assessment of 1925 with twenty per cent deduction on the farm and farm homes for county revenue," a copy of which resolution was filed as Exhibit C to the bill; and that pursuant to said resolution and in compliance with the directions therein contained, the defendant C. J. Spurling, clerk etc., was then preparing to make out said tax books as directed in said resolution. The specific relief prayed for in said bill was as follows:

"2nd. That an injunction issue by order of this honorable court restraining the defendant, his deputies, representatives or servants or anyone acting by or for him or under his authority, from making the tax books for Monroe county so as to show any change or reduction, except those made by the county board of equalization or the State board of equalization, and from expending any of the public funds in attempting to carry out the order of the county court made at the July term, 1925, as shown by Exhibit 'C' to this bill.

"3rd. That on the hearing of this cause, this injunction be made perpetual."

A temporary injunction was obtained by fiat granted preliminary to the filing of the bill.

C. J. Spurling, county court clerk, the sole defendant named in said bill, filed an answer thereto, in which he admitted that he was making preparation to make out the tax books in compliance with the aforesaid resolution of the county court and as directed thereby, and he denied the averment of the bill that the county court was without authority in the premises. He also denied that the aforesaid Private Acts of 1925, chapters 135 and 692, were unconstitutional, and denied that complainants were entitled to the injunction sought by their bill. The aforesaid answer of the clerk was not filed by the appellees in the case now before us, but by a solicitor who described himself as "county attorney," and who, the then county judge testifies, was at that time the regularly retained attorney of Monroe county.

On or about September 29, 1925, a petition on behalf of certain parties, who will be presently named, was presented to Chancellor Stewart, in and by which the petitioners prayed for leave to intervene in said cause and become parties defendant thereto etc., and on the date last named Chancellor Stewart endorsed on said petition a fiat as follows:

"To the C. & M. at Madisonville, Tennessee.

"File this petition and serve copy on solicitor for complainants in original bill. And said petition is filed subject to all legal defenses and exceptions. Petitioners will execute proper bond for cost upon filing of said petition. This September 29, 1925.

"T. L. Stewart, Chancellor."

In the caption of the petition, the petitioners name and describe themselves as follows:

"The petition of Monroe county court, James Axley, Lee Hitch, Luther Harris, George Kimbrough, James Mitchell, Laura Henderson, Fred Payne, Newt Sitzler, being eight members of the thirteen members composing the quarterly county court of Monroe county, Tennessee, and R. L. Boyd, James Axley, Cicero Kennedy, composing a special committee appointed by the said quarterly county court of Monroe county, to defend the litigation that might be brought in regard to the special assessment and tax law passed by the last Legislature of Monroe county, Tennessee."

This petition was not signed by appellees McDaniel and Kramer, but by other solicitors.

Later, on a day in October, 1925 (the exact date not appearing), assuming to act upon the leave granted by the aforesaid fiat of Chancellor Stewart, the appellees McDaniel and Kramer, as solicitors, filed an answer to the bill of R. C. Kefauver et al. v. C. J. Spurling, which answer is described therein as follows:

"The separate answer of James Axley, Lee Hitch, Luther Harris, George Kimbrough, James Mitchell, Laura Henderson,

Fred Payne, Newt Sitzler, being eight members of the thirteen members composing the quarterly county court of Monroe county, Tennessee, and R. L. Boyd, James Axley and Cicero Kennedy, composing a special committee appointed by the said quarterly county court of Monroe county, to defend the litigation that might be brought in regard to the special assessment and tax law passed by the last Legislature for Monroe county, Tennessee.''

It may be observed, in passing, that Monroe county was not described eo nomine, either as a petitioner in the petition seeking leave to intervene in the Kefauver suit, or as a defendant in the answer filed by the parties who thus intervened. However, in a decretal order subsequently made by Chancellor Taylor in disposing of a motion made by R. C. Kefauver et al. to dismiss the intervening petition, the Chancellor seems to have proceeded on the assumption that ''Monroe county'' was an intervening petitioner, and he recognized Monroe county as a proper party to the suit. In and by the decretal order just mentioned, the Chancellor dismissed the intervening petition insofar as it was filed by the eight members of the county court of Monroe county as individuals, but the Chancellor ordered, adjudged and decreed that the petitioner Monroe county, through its special committee appointed by the county court, to-wit: R. L. Boyd, James Axley and Cicero Kennedy, in their official capacity, be permitted to become defendants in said cause under their intervening petition therein filed, and to rely upon their answer as filed making defense to any and all issues raised by the original bill.

The case of R. C. Kefauver et al. v. C. J. Spurling proceeded to final judgment in the chancery court and then, on appeal, in the Supreme Court, with the present appellees, Messrs, McDaniel and Kramer, appearing for Monroe county and the committee named by the aforesaid resolution adopted by the quarterly county court on July 20, 1925.

The Chancellor held the Private Acts of 1925, chapters 135 and 692, unconstitutional and void, and held that the county court had no authority to direct the tax books made out on any basis other than that fixed by the county board of equalization, and the action of the county board of equalization was final except insofar as it was subject to revision or change by the State board of equalization.

The Chancellor's decree was affirmed by the Supreme Court. The published opinion of the Supreme Court (154 Tenn., 613) deals only with the attack made upon the constitutionality of said Private Acts of 1925, chapters 135 and 692, and is limited to a discussion of only one phase of that subject.

In their bill in the instant case, filed August 10, 1927, after a recital of the pertinent facts antecedent to their appearance as solicitors in the case of R. C. Kefauver et al. v. C. J. Spurling, complainants McDaniel and Kramer allege that, acting upon the authority vested in them under said resolution of July 20, 1925, Monroe county and its

quarterly county court, through its committee, C. A. Kennedy, James Axley and R. L. Boyd, employed the complainants to make defense for said county and county court and said committee in its representative capacity, to said suit; that complainant N. M. McDaniel is a practicing attorney residing at Madisonville, Tennessee, and that complainant R. R. Kramer is a practicing attorney, residing at Maryville, Tennessee; that under the terms of their said employment, complainants were to receive a fee of $500 for their services in the chancery court at Madisonville, and a like fee of $500 if it became necessary to try the case in the Supreme Court.

Complainants then stated the nature and extent of the work done and service rendered by them as solicitors in said cause in the chancery court and in the Supreme Court and they allege that $1000 is a just, fair and reasonable fee for the services thus rendered by them.

It is then alleged by the complainants that, although said services had been rendered and the case finally closed by the decision of the Supreme Court many months before the present bill was filed, the defendant, Monroe county, had failed and refused to make payment or settlement of said fees, and that same are justly due and owing to complainants and there are no proper credits against the same.

Complainants prayed for process, for judgment for $1000, with interest, and for general relief.

The defenses interposed by Monroe county in its answer to the bill, and upon which, through its assignments of error, it is relying in this court, are as follows:

(1) That the committee (C. A. Kennedy, James Axley and R. L. Boyd), appointed by the county court to "fight said suit" with which the county and the county court were "threatened," was appointed at a special or called session of the quarterly county court, and the call for said special session did not include this matter as one of the objects and purposes for which such special session was called, and therefore, the court had no legal right to adopt the resolution in question, and the committee was without power to contract for the county.

(2) That if said resolution of July 20, 1925, had been legally adopted, it was not broad enough, and was not in apt words, to give said committee authority to employ counsel to take part in a lawsuit to which Monroe county was not a party.

It appears from the proof that, shortly after the suit of R. C. Kefauver and others was brought against C. J. Spurling, county court clerk, the committee named in the aforesaid resolution of July 20, 1925, (R. L. Boyd, James Axley and C. A. Kennedy) met in the office of the County Judge (Kennedy) for the purpose of deciding what action, if any, should be taken by the committee. Kennedy was of the opinion that the "county attorney" should defend the suit, and was opposed to the employment of "additional counsel." Boyd

116

and Axley favored the employment of counsel other than the county attorney. No agreement being reached between Kennedy and the other two members of the committee, the meeting seems to have informally adjourned, and Boyd (according to Axley's testimony) acting as the "head man," contracted, or undertook to contract, with complainants as alleged in the bill. No other meetings of the "full committee" were held, and thereafter Boyd and Axley proceeded to act in the matter without the participation of Kennedy, and without notice to him of meetings of the committee or of any action or contemplated action by the committee.

In this connection, we quote certain undisputed testimony of C. A. Kennedy, as follows:

"Q. 9. Judge, what part did you take in the activities of that committee, if any? A. 9. We met one time in my office and was talking about getting additional counsel and I told them there was no need of it, that we had a county attorney and he could look after the matter without going to further expenses, and that I objected to any others being employed other than the county attorney; and they said 'Oh, he is against the 20% reduction,' and I said it doesn't matter whether he is against or for it he has to defend this lawsuit in the interest of the county. That is the only meeting I had with them.

"Q. 10. Did the committee take any action at that time with reference to employment of counsel? A. 10. Did not.

"Q. 11. Did either James Axley or R. L. Boyd ever meet with you, or the three of you meet together as committee after that date? A. 11. No, did not.

"Q. 12. Were you ever advised by either or both of them with reference to any committee meeting they expected to hold? A. 12. No sir.

"Q. 13. Were you advised of their action in employing counsel in that Kefauver suit before the counsel were employed? A. 13. I was not.

"Q. 14. Did the committee ever function as committee of three after that first meeting in your office? A. 14. No, sir, never did.

"Q. 15. On the occasion of the first meeting did the committee organize by electing chairman or secretary, or anything of that sort? A. 15. Don't think so; if they did I don't know anything about it.

"Q. 16. Were any minutes kept of the actions at that meeting? A. 16. If they were I knew nothing about it.

"Q. 17. Judge, I notice in the pleadings filed in the Kefauver suit that a petition was filed by certain members of the county court and by this committee of three, and later on an answer was filed by perhaps certain members of the county

court and also this committee of three, did you as a member of that committee have anything to do with the filing of that petition or the answer? A. 17. I certainly did not.

"Q. 18. Were you ever interviewed by anyone, or consulted by anyone, with reference to signing your name to the petition or to the answer as a member of that committee or as County Judge? A. 18. No sir, don't remember it."

We have stated, in substance, the facts disclosed by the record, so far as necessary to the proper disposition of the assignments of error.

Counties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impose all the liabilities to which they are subject. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale of corporate existence. They are ranked as quasi corporations. They possess no powers except such as are conferred expressly or by necessary implication, and these are strictly construed, and must be strictly pursued. Burnett v. Maloney, 97 Tenn., 697, 37 S. W. 689, 34 L. R. A., 541.

"The limits of all powers of counties, except those necessarily implied, must be found within the four corners of the statutory provisions made by the Legislature." Hence, one dealing with a county is bound at his peril to take notice of the limitations of its authority. State ex rel. v. Turnpike Co., 151 Tenn., 150, 160, 268 S. W., 627.

Sections 5997 and 5998, Shan. Code, read as follows:

"5997. The chairman and (or) judge of the county courts of this State shall have power to convene the quarterly courts in special session when, in his opinion, the public necessities require it, or upon the application to him, in writing, of any five justices, members of said court, so to do."

"5998. Said call shall be made by publication in some newspaper published in the county, or by personal notices sent by the clerk of the court, at least five days before the time of the convening of said court, which call or notice shall specify the objects and purposes for which said special session is called, and no other business but that embraced in said call shall be transacted during the sitting of said special term."

The foregoing sections are carried into Shannon's Code from the Act of 1889, chapter 257, and prior to that Act the law did not authorize special terms of the county court. It was accordingly held that any action taken by the county court at a special term was void. Cannon v. McAdams, 7 Heisk., 376, 378.

It is seen that the statute which authorizes special terms of the county court (Act of 1889, chapter 257, supra) expressly limits the business which may be transacted at such special term to that which is specified or embraced in the "call." "Requirements of this character are mandatory and jurisdictional, and acts done at a meet-

ing are void where the requirements have not been complied with." 43 Corpus Juris, p. 500, sec. 762.

The "call" for the special term or session of July 20, 1925, specified two, and only two, objects and purposes for which said special session was called, viz.: (1) the raising of the tax rate for Monroe county, and (2) the consideration of the resolution relative to bond issue for the McCroskey Highway.

It is not suggested that the resolution involved in this case had any relevancy to the bond issue for the McCroskey Highway, but it is insisted for appellees that the resolution in question was germane to the purpose and object of "raising the tax rate for Monroe county." We do not think so.

The law authorized the county court to levy taxes on property for county purposes and fix the rate thereof on the value as "ascertained by the assessment for State taxes" (Shan. Code, sections 648, 649, 650); but the county court had no power or control over the assessment of property for taxes. The action of the county equalization board in the matter of assessments was final, except as revised and changed by the State board of equalization. Shan. Code, sec. 802a11.

A "call" which gave notice that the county court would convene in special session "for the purpose of considering the raising of the tax rate for Monroe county" would not convey information, or even carry a suggestion, that the court would consider and adopt a resolution providing for the defense of a suit relating to the assessment of real property for taxes—a subject wholly beyond the jurisdiction of the county court. Moreover, the judge or chairman of the county court was authorized "to employ counsel to defend suits against the county," and the counsel thus employed was "entitled to a reasonable fee, to be allowed by the court trying the cause." Shan. Code, sec. 660, subsec. 1.

We are of the opinion that the resolution of July 20, 1925, purporting to appoint and authorize the committee to "fight" the "threatened" suit was not within the scope of the call for the special session, and was therefore void, and conferred no authority upon the committee therein named to contract on behalf of or to bind Monroe county for the payment of attorneys fees.

We are also of the opinion that the knowledge of the individual justices that the suit was pending and that the appellees, as solicitors, had answered and were conducting the defense therein on behalf of the county and the committee did not operate as a ratification of the acts of the committee, or an implied promise of the county to pay the appellees for their services. There can be no legal appropriation and disposition of the public funds of the county except in the manner provided by statute. State v. True, 116 Tenn., 294, 312-314, 95 S. W., 1028; Holtzclaw v. Hamilton County, 101 Tenn., 338, 47 S. W., 421; McHenderson v. Anderson County, 105 Tenn., 591, 59 S. W., 1016.

It results from the views we have stated herein that the appellant's first assignment of error is sustained. This conclusion renders the second assignment of error immaterial, and its consideration unnecessary.

The decree of the chancery court is reversed and the complainants' suit is dismissed. The costs of the cause, including the costs of the appeal, will be adjudged against the complainants and the surety on their cost bond.

Crownover and DeWitt, JJ., concur.