Shelby County *v.* Exposition Co.

SHELBY COUNTY *v.* EXPOSITION CO.*

(*Jackson.*    May 28,  1896.)

1. COUNTY COURTS. *Jurisdiction of, statutory.*

Doctrine reaffirmed that County Courts possess only such powers as are constitutionally conferred by statute. (*Post, p. 657.*)

Case cited and approved: Railway Company *v.* Wilson County, 89 Tenn., 597.

2. CONSTITUTIONAL LAW. *Conferring powers upon counties.*

Having power under the Constitution to authorize counties to impose taxes for county purposes, the Legislature necessarily has power to authorize County Courts to appropriate the moneys raised for such purposes. (*Post, pp. 658, 659.*)

Constitution construed: Art. II., § 29.

Act construed: Acts 1895, Ch. 25.

3. SAME. *Exhibition at a state centennial exposition is a county purpose.*

An exhibition of the resources of a county at a State centennial exposition is a county purpose within the meaning of the constitutional provision authorizing the Legislature to confer power upon the counties to impose taxes for county purposes. (*Post, pp. 659-661.*)

Constitution construed: Art. II., § 29.

Act construed: Acts 1895, ch. 25.

Cases cited and approved: Nichol *v.* Nashville, 9 Hum., 252; McCallie *v.* Chattanooga, 3 Head, 318; Adams *v.* Railroad, 2 Cold., 645; Railroad *v.* County Court, 1 Sneed, 637; 14 L. R. A., 479; 4 Am. Rep., 406; 18 L. R. A., 556; 11 Phila., 276; 140 Mass., 381, 467; 92 Col., 59.

4. SAME. *State centennial exposition outside county is a county purpose.*

And the fact that the State centennial exposition is to be celebrated outside the territorial limits of the county does not make the exhibition thereat of the county's resources other than a county purpose. (*Post, pp. 661-663.*)

*As to the public purposes for which money may be appropriated, see note to *Daggett* v. *Colgan* (Cal.), 14 L. R. A., 474.—REPORTER.

Shelby County *v.* Exposition Co.

Cases cited and approved: Railroad *v.* County Court, 1 Sneed, 667; McCallie *v.* Chattanooga, 3 Head, 318; Adams *v.* Railroad, 2 Cold., 645.

5. COUNTY. *Public schools are resources of.*

The public schools of a county may be classed among her "resources," within the meaning of a statute, and resolutions of a county court for an exhibit of the county resources at a State exposition. (*Post, pp. 659, 660, 662, 663.*)

Act construed: Acts 1895, Ch. 25.

6. CENTENNIAL EXPOSITION. *Appropriations to, not avoided by extension of its duration.*

An appropriation for a county exhibition at the State Centennial Exposition in 1896 is not avoided by a subsequent extension and prolongation of the exposition, so that, while beginning in 1896, it shall be carried into the year 1897. (*Post, pp. 663–665.*)

7. SAME. *Not a necessary party to suit to enforce county appropriations.*

The Centennial Exposition Company is not a necessary party to a suit to enforce payment of a county subscription. (*Post, pp. 665–667.*)

---

FROM   SHELBY.

---

Appeal from the Circuit Court of Shelby County. L. H. ESTES, J.

JAMES M. GREER for Shelby County.

MALONE & MALONE and TURLEY & WRIGHT for Exposition Co.

CALDWELL, J. On the thirteenth day of January, 1896, the County Court of Shelby County, in regular quarterly session assembled, passed a resolution, in usual and proper form, appropriating twenty-

five thousand dollars of the county's revenue, then in the county treasury or to be thereafter collected in due course of law, "to provide for an exhibit of the resources of the county in the Tennessee Centennial and International Exposition, to be held in the city of Nashville during the current year 1896," the fund so appropriated "to be administered" by the "County Court Centennial Committee," composed of George B. Fleece, J. M. Coleman, N. C. Taylor, J. M. Goodbar, R. C. Graves, and N. C. Perkins, citizens of Shelby County, "under such rules and regulations" as the Court should, "from time to time, provide." On a later day of the same term the Court, by appropriate resolution, "authorized" its Chairman to issue warrants on the County Trustee "in payment of all orders for expenses incurred by the County Court Centennial Committee," such orders to be first approved by that committee's "executive committee."

Some time thereafter the County Court Centennial Committee "was applied to by Miss Lida Thomas, Superintendent of Public Schools for Shelby County, for an appropriation of fifty dollars, to enable her to make an exhibit in behalf of the county schools at the approaching Centennial celebration," and "George B. Fleece, one of the committee, having incurred certain traveling expenses in and about the execution of his duties as a member of said committee, amounting to twenty-five dollars, applied for a sum sufficient to cover the said expenses." Both

of these claims were properly approved, and the County Court Centennial Committee "applied to the Chairman of the County Court to issue his warrants for said sums, which he declined to do." Thereupon the present action was commenced as an "agreed case." The Tennessee Centennial Exposition Company and the several members of the Centennial Committee of the County Court of Shelby County being plaintiffs, and Shelby County and John J. Barry, Chairman of her County Court, being defendants.

The plaintiffs "insist that it was the duty of the Chairman of said Court to have issued warrants upon the application mentioned above," and seek to have him compelled by mandamus to issue them now; while the defendants "insist that the Chairman should not have issued said warrants, and that his refusal to issue them was right, under all the facts and circumstances of the case."

The Circuit Judge "found the matter of law submitted to the Court, upon the agreed statement of facts, in favor of the plaintiffs and against the defendants," and, thereupon, ordered and adjudged that the Chairman of the County Court of Shelby County "issue his warrant for fifty dollars, payable to Lida Thomas, and also issue his warrant for twenty-five dollars, payable to George B. Fleece," and that such warrants, when issued, "be delivered to . . . . the committee appointed by the County Court, as set forth in the agreed case."

The defendants have appealed in error. There can be no reasonable doubt that the "expenses," for which the Chairman was authorized to issue his warrants, were expected and intended to embrace all proper expenditures, whatever the form or nature, to be made by the committee in connection with the contemplated exhibit, and that the Court designed that all outlays which the committee should have the right to make should come within and be paid alone out of the appropriation of twenty-five thousand dollars; hence, in considering the right of the committee to demand warrants for the matters, or expenses, involved in this case, it becomes necessary to determine, in the first place, whether or not the appropriation itself was validly made.

If the appropriation was valid in the first instance, and nothing has since occurred to render it inoperative, the judgment of the Court below is clearly right.

County Courts, in this State, are creatures of statute merely, possessed of statutory jurisdiction alone, and wholly wanting in common law powers. All their powers emanate from the Legislature, and in granting those powers the Legislature itself must act within certain constitutional limitations. *Railway Co.* v. *Wilson County*, 89 Tenn., 597.

The appropriation in the present case was made under and by virtue of a special enabling Act, passed in February, 1895, which is as follows:

42—12 r

"AN Act to empower County Courts to appropriate money for an exhibit at the Tennessee Centennial Exposition.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the County Courts of the respective counties of Tennessee are hereby authorized and empowered to make appropriations of money to provide for an exhibit of their resources at the Tennessee Exposition, to be held in the city of Nashville, State of Tennessee, in the year 1896; and to prescribe ways and means, rules and regulations, governing the expenditure of any money so appropriated.

"SEC. 2. *Be it further enacted,* That this Act take effect from and after its passage, the public welfare requiring it." Acts 1895, Ch. 25.

If the exhibition of a county's resources at the exposition mentioned is to be regarded as a county purpose, then this legislation is undoubtedly authorized by the first clause of Sec. 29, Art. II., of the State Constitution of 1870, which declares that "the General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation."

Obviously the Legislature may authorize counties and incorporated towns to appropriate money for county and municipal purposes, respectively, if it has

power to authorize them to impose taxes for such purposes; the power to do the latter, which is expressly stated, necessarily includes the power to do the former.

It follows, therefore, that the Legislature acted within its constitutional power in the passage of the Act mentioned, if the appropriations therein authorized to be made shall be held to be · for county purposes in the true sense; and in the latter event it follows, furthermore, that the said Act, being complete in form and substance, and free from other constitutional objections, afforded ample authority to the County Court of Shelby County for the making of the appropriation called in question in this case.

There is no exact rule by which the Courts may always determine what is, and what is not, a county purpose, or a corporation purpose, within the meaning of the provision of the Constitution just quoted. The question must be decided upon the particular facts of each case.

This Court has held the building of a railroad into a city to be a corporation purpose (*Nichol* v. *Nashville*, 9 Hum., 252); and likewise the building of a railroad near a city, when calculated to promote the interests of the city. *McCallie* v. *Chattanooga*, 3 Head, 318; *Adams* v. *Railroad Co.*, 2 Cold., 645. For the same reason it has also adjudged that the construction of a railroad through a county is a county purpose. *Railroad Co.* v. *County Court*, 1 Sneed, 637. In accord is the

great weight of authority.  See cases cited in note
on p. 479 of 14 L. R. A.

Referring to legislative power to impose the bur-
den of taxation for a public purpose, Judge Cooley
says:    "I do not understand that the word 'pub-
lic,' when employed in  reference to this power, is
to be construed or applied in any narrow or illib-
eral sense, or in  any  sense which would preclude
the Legislature from  taking  broad views of State
interest, necessity, or  policy, or from  giving those
views effect by means of the public revenues.   Ne-
cessity alone is not  the  test  by which  the  lim-
its of State authority in  this direction are  to  be
defined, but a wise statesmanship must look beyond
the expenditures which are absolutely needful to the
continued existence of organized government, and
embrace others which may tend to make that gov-
ernment subserve  the  general well-being of society,
and advance the present and prospective happiness
and prosperity of the people."    The People v.  The
Town of Salem, 20 Mich., 452 (S. C., 4 Am. R.,
406.)

To our minds it is entirely clear that an exhibi-
tion of the resources of Shelby County at the ap-
proaching State Centennial Exposition is a county
purpose.   In view of the fact that the event to be
celebrated is one of no · less note and importance
than the birth of a great State into the American
Union, and of the further fact that the exposition
is reasonably expected to attract great and favorable

attention throughout the country, and be participated in and largely attended by intelligent and enterprising citizens of numerous other States, at least it is beyond plausible debate that such an exhibition is well calculated to advance the material interests and promote the general welfare of the people of the county making it. It will excite industry, thrift, development, and worthy emulation in different avenues of commerce, agriculture, manufacture, art, and education within the county, thereby tending to the permanent betterment and prosperity of her whole people. In short, it will encourage progress, and progress will insure increased intelligence, wealth, and happiness for her people, individually and collectively. Undeniably, that which promotes such an object and facilitates such a result in any county, is, to that county, a county purpose in the truest sense.

It is a vain impeachment of the purpose to say that the exhibition provided for is to be made beyond the territorial limits of the county, and at the capital of the State, some two hundred miles away. That it should be made in the county is not essential. *Railroad Co.* v. *County Court*, 1 Sneed, 667; *McCallie* v. *Chattanooga*, 3 Head, 318; *Adams* v. *Railroad Co.*, 2 Cold., 645.

Kindred questions have been similarly decided in other States. Recently, an appropriation of one hundred thousand dollars, made by the Legislature of Kentucky to make an exhibit of the resources of

that State at the World's Columbian Exposition, at Chicago, Ill., was adjudged to be for a public purpose within the contemplation of Sec. 171 of the Kentucky Constitution, which declares that "taxes shall, be levied and collected for public purposes only." *Norman* v. *The Kentucky Board, etc.*, 93 Ky., 537 (S. C., 18 L. R. A., 556).

In 1891 the Legislature of California passed an Act appropriating three hundred thousand dollars "to meet the expenses of erecting buildings and maintaining an exhibit of the products" of that State at the World's Columbian Exposition, at Chicago. That appropriation was held to be for a public use. *Doggett* v. *Colgan*, 92 Cal., 53 (S. C., 14 L. R. A., 474).

In the latter case, the Court, after deciding the point just stated, said, additionally, that it has never been doubted that the State, unless restrained by its Constitution, "could confer upon a city or town the authority to celebrate such important events in the history of the country, as appeal to the patriotism or higher sentiments of the people, and to tax their citizens to pay the expense thereof. Thus it was held that the city of Philadelphia had power under its charter to provide for the entertainment of distinguished visitors upon the occasion of the celebration of the centennial anniversary of American independence. *Tatham* v. *Philadelphia*, 11 Phila., 276. So also, in Massachusetts, by general statutes, the power has been conferred upon towns to cele-

brate the centennial anniversary of their incorporation (*Hill* v. *East Hampton*, 140 Mass., 381), and also to appropriate money for the celebration of holidays, and for other public purposes. *Hubbard* v. *Taunton*, 140 Mass., 467." 92 Cal., 59.

But, passing the question of the original validity of the appropriation involved in the case at bar, plaintiffs in error contend that it has been rendered inoperative and null by what they say is a postponement of the exposition until 1897. The facts upon which this contention is based are disclosed in a resolution, adopted by the stockholders of the Tennessee Centennial Exposition Company, on the seventh of February, 1896, as follows:

"1. *Resolved*, The time for inauguration of the Tennessee Centennial Exposition of 1896, with all proper ceremonials, is hereby fixed and the centennial year will be celebrated on the first day of June, 1896.

"2. The period of preparation, embracing the completion of all buildings and the accumulation of all material exhibits, shall be extended to embrace the months of May, June, July, August, September, and October of the year 1897, so as to allow such an extended period of preparation as will insure results satisfactory, in every detail, to the directors and to the public, and highly creditable to the State, and to every contributor to the enterprise.

"3. The construction of buildings, the accumulation of exhibits, and all other preparations incident

to the opening and holding of the exposition, shall be pushed to completion as rapidly as circumstances may permit, and the first day of May, 1897, will be the day when the exposition will be so far equipped in all its appointments as to justify an invitation, which is hereby extended to the public, to attend it, until its close on the last day of October, 1897.''

It will be readily observed that this resolution does not work an entire and complete postponement, but rather an extension and prolongation. It is not an abandonment of the exposition first intended and the substitution of another one in its stead. The inaugural ceremonies and the formal celebration of the great event to be commemorated will occur on the first day of June, 1896, as originally contemplated; but, for the enlargement of the enterprise and the greater success of the exposition as such, the time for the actual and finished display of exhibits from far and near, and for the general attendance of the public, is carried into the year 1897. Presumably, the increase in magnitude, and the larger success thus provided for and reasonably insured, will redound to the advantage of all exhibitors, Shelby County among the number.

The plan now is to extend the enterprise through two years instead of one, as originally designed, the first (1896) to be used in formal opening and preparation, and the second (1897) for the great display and its consummation. This change is not

so radical as to annul appropriations previously made.

The mention of only the one year (1896) in the Act of the Legislature and in the resolution of the County Court of Shelby County, does not, in a legal sense, limit and confine the appropriation, made by the latter, to an exposition to be completed and terminated in that year. The time mentioned is not to be considered as absolutely controlling in all respects, nor should it be treated as of such importance and inflexibility as to override and defeat the whole enterprise in case of such a change as has been made. The manifest purpose and intent on of the Legislature, and of the County Court, were to have a great and creditable exposition at the capital of the State in connection with the celebration of her one hundredth anniversary, and whether the whole of that should be accomplished in one year, or in two, was not of the essence of the legislation by the State or of the resolution by the County Court. The exposition designed by them is the same provided for in the resolution of the stockholders, with only such changes as seem most favorable, if not indispensable, to its sure and perfect success. These changes facilitate, rather than impede or destroy, the paramount object of a State Centennial Exposition.

It has been well and truly said that the making of the appropriation by the County Court created and established no contractual relation between the county of Shelby and the Tennessee Centennial Ex-

position Company, and that said company cannot have and maintain a suit for any part of the fund appropriated. But that does not affect the validity of the appropriation as made. That company was joined in this suit for form's sake merely, and no judgment was sought or rendered in its favor.

The real, and only necessary plaintiffs, were the members of the "County Court · Centennial Committee," appointed by the County Court for the administration of the fund appropriated; and they brought the suit simply to compel a compliance, on the part of the Chairman, with the Court's direction to issue warrants in payment of all expenses incurred by the committee, as the representative of the county, in relation to its proposed exhibit.

The suit was well brought, and the judgment rendered by the Circuit Judge is right. Both matters for which warrants were sought were legitimate matters of expense. The warrant for twenty - five dollars was sought to meet an outlay by a member of the committee while traveling in the interest of business devolved upon the ·committee by the County Court; that for fifty dollars was sought to enable the committee, through the County Superintendent of Public Instruction, to prepare an exhibit on behalf of the public schools of the county. In the broad and liberal sense, the public schools of a county may well be classed among her resources. Obviously, the word "resources," as employed in the Act of the Legislature and in the resolution of the

County Court, was intended to include products of farm, forest, manufacture, art, education, etc.

In conclusion, it should be remarked that the County Court of Shelby County has never attempted or signified any desire to recall, annul, or withhold the appropriation made, but has simply directed the able County Attorney to represent the county in the preparation, submission, and argument of this agreed case, to the end that this Court, in due course of proceeding, might pass upon and finally decide the question herein considered.

Affirmed.