*BANDY *et al. v.* STATE *ex rel.* BOARD OF EDUCATION OF
SULLIVAN COUNTY *et al.*

(*Knoxville*, September Term, 1947.)

Opinion filed January 16, 1948.

---

*See also Baker v. Milam, p. 20, infra.

PRICE & PRICE, of Johnson City, and KILGO & ARMSTRONG, of Greeneville, for appellants.

HAL H. CARR, County Attorney of Sullivan County, of Blountville, and PENN, HUNTER, SMITH & DAVIS, of Kingsport, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The Board of Education of Sullivan County filed its original injunction bill in the Chancery Court to restrain the County Court of said County, and also a committee appointed by the Court, from "locating, erecting, or contracting to locate, build or erect a schoolhouse" upon a named parcel of land in the 10th or 11th Civil District; that the defendants be further enjoined from making any expenditure of funds arising from the sale of certain school bonds issued pursuant to Code, sections 2557—2569 of the 1932 Code of Tennessee. They demurred to the bill upon several grounds, the substance of which will be stated and discussed later.

The original bill alleges that in 1941 the quarterly County Court, deeming it important that an additional high school be erected in the "lower part of the County," adopted a resolution authorizing the issuance and sale of bonds for that purpose. Bonds were accordingly sold to the extent of $185,000 and the proceeds thereof made available to complete the project. The money was lodged with the county trustee.

The resolution above referred to provided that the location of the school would be decided by the Board of Education. The bonds were issued under the provisions of sections 2557—2569 of the 1932 Code and hence became a binding obligation without a referendum to the qualified voters of the county.

The Board selected a site for the school known in the record as the "Vermont" site. Not long after the selection of the "Vermont" site the erection of the school building was suspended due to the prosecution of the war, and shortage of materials, and was not considered again until the spring of 1947. In April, 1947, the quarterly County Court, realizing that the amount of money on deposit with the trustee ($185,000) was insufficient to erect and equip a modern school building, proceeded under Code, sections 2557—2569 to issue bonds to the extent of $500,000. The money derived from the sale of this bond issue was also lodged with the trustee, as required by law. The funds being thus made available to erect and equip the high school, the Board of Education decided upon another location for the school, to wit, the "Lynn Garden" site, and in October, 1947, awarded a contract to the Armstrong Construction Company of Kingsport, Tennessee. The total amount of the contract was $395,000. This action of the Board was challenged by certain citizens by a bill in the Chancery Court at Kingsport in

which an injunction was sought to restrain the erection of the school upon the "Lynn Garden" site. The suit was dismissed and the decree of the lower Court affirmed.

The quarterly County Court was evidently displeased with the action of the Board of Education in changing the location of the school from the "Vermont" site to the "Lynn Garden" site. The County Court, immediately upon the selection of the latter site, undertook by resolution. to appropriate the net proceeds from the two bond issues to the erection of a high school at "Vermont," and also appointed a committee to let the contract and supervise the work.

The Board of Education thereupon brought the present suit, alleging the forgoing facts, and secured an injunction restraining the County judge, the quarterly County Court and the committee from interfering with its plans for the erection of the high school at the "Lynn Garden" site. The Board claimed that the defendants had no authority to act in the premises; that the quarterly County Court's appropriation of funds out of the special school fund in the hands of the trustee was wholly void. The substance of the demurrer which challenged the authority of the Board of Education is as follows:

(a) "The bill seeks to compel the Court to surrender its powers of general County government to the Board of Education."

(b) "The Board of Education is acting without the approval of the County Court and is acting illegally."

(c) The Board of Education "does not have the exclusive power to establish and build schools, or to buy sites, but must always have the approval of the Quarterly County Court in such matters."

The Chancellor overruled the demurrer and granted an appeal. The assignments of error present the identical

questions made in the demurrer. We think they are without merit.

The entire argument of appellants' counsel is based upon their contention that the County Court, being a constitutional Court, is supreme in its authority to the extent that the Board of Education can do nothing without its express approval.

■ We readily concede that it is a constitutional Court. But it is limited in its jurisdiction to such power as is "expressly, or by necessary implication . . . conferred upon it by the Constitution." *Prescott v. Duncan*, 126 Tenn. 106, 148 S. W. 229, 234. In this case the Court holds that the legislature may take from the County Court *all power* not thus conferred upon it.

In *State* v. *True*, 116 Tenn. 294, 296, 95 S. W. 1028, 1032, it was held: "The County Court, whether quorum or quarterly, has only such powers and jurisdiction as are vested in it by statute," etc. To the same effect see *Shelby County* v. *Memphis Abstract Co.*, 140 Tenn. 74, 203 S. W. 339, L. R. A. 1918E, 939; *Railway Co.* v. *Wilson County*, 89 Tenn. 597, 158 S. W. 446.

There can be no doubt but that the quarterly court is given authority over general funds in the county treasury, which it may appropriate for purposes authorized by law. But there is no statute authorizing it to select sites upon which to erect school buildings, erect and equip the same, or superintend the expenditure of funds derived solely from the issuance of bonds under Code sections 2557 to 2569. These sections authorize the County Court to issue bonds for erection of schoolhouses, and for repairing, furnishing and equipping them, which shall be known as "school bonds," Sec. 2558, and the money arising from the sale shall be kept separate and apart from other funds and apportioned between the County and City. See Secs.

2563-2566. The latter section, 2566, reads as follows: ''The proceeds of said sale of said bonds shall constitute a special fund to be known as 'special school fund,' which shall be kept by the trustee of said County and the treasurer of said City schools separate and apart from all other funds and shall be applied exclusively to purchase property for school purposes, to purchase sites for school buildings, to erect or repair school buildings and to furnish and equip school buildings, and to be used for no other purposes by the County Board of Education of said County or by the City Board of Education, which said City Board shall have a right to draw warrants on said funds for said purposes only.''

It thus clearly appears that only the County Board of Education, and the City Board of Education, as the case may be, are authorized to draw warrants on said fund for the purchase of sites for school buildings, or to repair, furnish and equip them.

██ ██ When the County Court has once directed the issuance and sale of bonds for school purposes and lodged the proceeds thereof with the trustee, its authority ends, except to audit the accounts of the school board to see that there is no waste of public funds. There is no provision in the constitution giving the quarterly Court any authority over public schools and school property. Whatever power it may claim or seek to exercise is derived solely from the legislature. If a power is not given it is said that it does not exist.

In *Wright* v. *State*, 171 Tenn. 628, 106 S. W. (2d) 866, 869, it was held: ''. . . . the powers intrusted to the County Courts emanate from the Legislature alone; hence when a power claimed for them is not conferred it must be held not to exist.''

In *State ex rel.* v. *Groce*, 152 Tenn. 566, 280 S. W. 27, 28, it is expressly pointed out by Mr. Justice McKINNEY that "the supervision and control of the schools of the county, the employment of teachers, the fixing of salaries, *erecting of buildings, etc., is entirely taken from the county court and vested in the county board of education.*" (Italics ours.)

Now in the light of this holding of the Court, and the statutes above referred to, it cannot be said that the acts of the County School Board must have the approval of the quarterly Court to render such acts legal. The only case cited by counsel for the appellants is *State ex rel.* v. *Brown*, 159 Tenn. 591, 21 S. W. (2d) 721. This was a "taxpayers" suit to restrain the unlawful expenditure of public funds by the County Court. It is true that the selection of a site for a public school by the County Court was involved. But a careful reading of the opinion reveals the fact that there was no conflict of authority between the Court and the County Board of Education. They were acting cooperatively. The only effect of this decision is that a taxpayer has no standing in Court to question the authority of the County Court to erect a schoolhouse where it is done in cooperation with the school board. The holding of the Court in this case should be confined to its own facts.

The legislature has delegated to quarterly County Courts many duties and responsibilities pertaining to the successful operation of our public schools. Code, Secs. 2346, 2347, 2557 to 2569. But they are given no authority to direct a County School Board where it may erect, furnish and equip a high school building; nor are they clothed with power to make an appropriation out of funds arising

18

from the sale of school bonds and lodged with the County trustee for "special school purposes."

Counsel for appellants have confused the authority of the quarterly County Court over school funds arising from taxation and its authority over funds arising from the sale of school bonds. The argument is made that since the County Court must approve a budget, which is prepared and submitted to it by the County Board of Education, that there can be no expenditure of money arising from the sale of bonds without the Court's approval, citing Code, Secs. 2324, 2325. These Code sections, and various subsections, relate to duty imposed upon the County Superintendent of Schools. He is required by subsection (21) "to make a written report, quarterly, to the County Court, for the County Board of Education, of all receipts and expenditures of the public school funds," etc., "which shall be audited by the County Judge and the finance committee of the County Court." Subsection (14) of Sec. 2325 requires that "the County Superintendent and chairman of the County board . . . prepare a budget on forms furnished by the commissioner of education, and, when said budget has been approved by the board, to submit the same to the quarterly County Court at the April term."

It will be noted that the foregoing Code sections confer no authority upon the quarterly Court to prepare a budget nor draw warrants upon the fund for the payment of general school expenses. The County School Board and Superintendent prepare the budget and it is then submitted to the County Court evidently to determine if the amount of the budget exceeds the total amount of money that has been raised by taxation for general school purposes. The money arising from the sale of school

bonds and lodged with the County trustee as a "special school fund" to erect, repair and equip schoolhouses becomes no part of any County school budget. The argument, therefore, of counsel that because the quarterly court audits the school budget and must approve it and that it must also approve the expenditure of money arising from the sale of school bonds, is wholly without merit.

The assignments of error are overruled and the Chancellor's decree is affirmed.

All concur.