James M. Mosier, County Judge of Putnam County, Putnam County, and the Quarterly Court of Putnam County, Appellants,

*v.*

J. C. Thompson et al., Appellees.

393 S.W.2d 734.

(*Nashville,* December Term, 1964.)

Opinion filed September 3, 1965.

FLATT & FLATT, MADDUX, CAMERON & JARED, Cookeville, for appellants.

THOMAS H. HAILE, County Attorney, Cookeville, for Putnam County.

LANGFORD & LANGFORD, Cookeville, for Putnam County Board of Education and Putnam County Superintendent of Schools.

SOLON FITZPATRICK, Carthage, CECIL SIMS, Nashville, for James T. Watts & Co. and U. S. Fidelity & Guaranty Co.

MR. JUSTICE WHITE delivered the opinion of the Court.

In a Special Session of the Quarterly County Court of Putnam County, held in February, 1964, it was resolved that said County take appropriate action, in court if necessary, to rescind a contract executed by the Putnam County Board of Education with James T. Watts and Company, contractors, for the construction of a new County high school building.

Pursuant to such resolution, the bill filed herein alleged that the contract, though originally awarded pursuant to a low-bid after advertisement, was negotiated and executed at a different figure and for less structure than originally contemplated because of a lack of funds to pay the bid price. It was averred that the structure as agreed upon between the defendants in their negotiation would result in the erection of a shell building and would, therefore, constitute illegal waste of public funds; that the contract was against public policy, illegal, void, and unenforceable because the ultimate price of such high school building was contingent upon the action and conduct of third parties, not parties to the contract; and that there had been a fraudulent collusion between the School Board and the said contractor, but no facts are averred to support the charge of collusion.

The bill shows that on August 27, 1962 an appropriation of $1,040,000.00 was authorized by the complainant Quarterly Court on the recommendation of the School Board, for the construction of the new high school. Such appropriation "to be derived from the issuance of general obligation bonds" of the County.

A demurrer was filed setting forth a number of grounds, contending *inter alia,* that the complainants had no legal right to file and maintain the suit and further that the complainants were attempting to usurp the

power and authority and the discretion vested in the County Board of Education.

Upon the hearing the chancellor sustained the demurrer upon the ground that the complainants were without authority of law to maintain the action and further that the exclusive right of making contracts, such as the one involved, was vested in the sound discretion of the County Board of Education.

We do not find it necessary to discuss the merits of the case since we believe the question of whether the County Judge and the Quarterly County Court have the authority in law to maintain this action against the County Board of Education is determinative of this case.

 The power and jurisdiction of quarterly courts is set out by statute and it has long been the policy of this State that such enabling statutes are strictly construed. It has been held repeatedly that the county court, whether quorum or quarterly, has only such powers and jurisdiction as are vested in it by statute. The case of *Wright v. State,* 171 Tenn. 628, 106 S.W.2d 866 (1937), held:

> This court, speaking of the power of county courts, further has held that the powers intrusted to the county courts emanate from the Legislature alone; hence when a power claimed for them is not conferred it must be held not to exist. *Nashville & K. R. Co. v. Wilson County,* 89 Tenn. 597, 15 S.W. 446; *Shelby County v. Tennessee Cent. Exposition Co.,* 96 Tenn. 653, 36 S.W. 694 [33 L.R.A. 717]. See, also, Code sec. 161 [now T.C.A. sec. 16-701]. 171 Tenn. at 637, 196 S.W.2d 869.

█ When the power or jurisdiction exercised by the quarterly court is called to question, as done by demurrer here, the party relying upon the action of the court must

be able to point out the statute conferring the jurisdiction. *State ex rel. Davidson County Bd. of Ed. v. Pollard,* 124 Tenn. 127, 136 S.W. 427 (1910); *Johnson v. Brice,* 112 Tenn. 59, 83 S.W. 791 (1903); *State v. True,* 116 Tenn. 294, 95 S.W. 1028 (1905).

We have carefully examined the applicable statute, T.C.A. sec. 49-201, which sets out the duties of the quarterly county court. Any right or power which the quarterly county court might have should be contained in Subsections (2), (3), (4), (5) or (8), of this statute.[1]

This statute was considered and interpreted in the case of *Bandy v. State ex rel. Bd. of Education of Sullivan County,* 186 Tenn. 11, 207 S.W.2d 1011 (1948). It held that the quarterly court has no authority to direct a county school board where it may erect, furnish and equip a

---

[1] (2) To consider, on the recommendation of the county board of education, school budgets for the county elementary and county high schools, and to provide necessary funds to enable said county board to meet all obligations under the adopted budgets.

(3) To require the county board of education, through the county superintendent, to make a quarterly report of the receipts and expenditures of the public school funds, the needs of the county elementary and the county high schools, the progress made in their development and such other information as to the administration of the public schools as it may require.

(4) To require its finance committee to examine the accounts of the county board of education quarterly, or at any other time it may appear that said county board is misusing any of the public school funds, or exceeding the budget adopted by said court; or it may appoint a competent auditor to make said examination, the cost of such examination to be paid out of county funds.

(5) To submit to the voters of the county, at any regular session, or at any special session called for that purpose, the proposition to issue bonds for the purpose of purchasing grounds, erecting and furnishing school buildings, and, upon the affirmative vote of the majority cast in said election, to issue said bonds in accord therewith.

(8) To levy sufficient taxes or provide funds by bond issues by the voters for the purchase of school grounds, the erection and repair of school buildings, and for equipping the same; provided, same shall have been provided for by the quarterly court, or that said court shall have approved the authorization of same by the county board of education.

high school building. This case is authority also for the conclusion that the quarterly court has the power to audit the accounts of the school board to see there is no waste, but this authority does not give the court power to oversee the expenditure of special school funds financed by a bond issue. The Bandy case, at page 16, further held:

When the county court has once directed the issuance and sale of bonds for school purposes and lodged the proceeds thereof with the trustee, its authority ends, except to audit the accounts of the school board to see that there is no waste of public funds. There is no provision in the constitution giving the quarterly court any authority over public schools and school property. Whatever power it may claim or seek to exercise is derived solely from the legislature. If a power is not given it is said that it does not exist. 186 Tenn. at 16, 207 S.W.2d 1013.

The money arising from the sale of school bonds and lodged with the county trustee as a "special school fund" to erect, repair and equip schoolhouses becomes no part of any county school budget. The argument, therefore, of counsel that because the quarterly court audits the school budget and must approve it and that it must also approve the expenditure of money arising from the sale of school bonds, is wholly without merit. 186 Tenn. at 18-19, 207 S.W.2d 1014.

Also, in the case of *Baker et al. v. Milam,* 186 Tenn. 20, 207 S.W.2d 1014 (1948), this Court held, among other things, that resolutions of a quarterly county court undertaking to allocate funds between schools and to appoint a committee to supervise the expenditure of the money had no binding effect. The Court said:

When the bonds are issued and sold, and the funds lodged with the county trustee as required by law, the quarterly court has no control over this money; it has no right to draw upon the fund for any purpose. Only the school board is authorized to draw upon this fund, Code, Sec. 2566 [now T.C.A. sec. 49-713], and this board has the exclusive authority to allocate or prorata the fund for the erection and equipment of schoolhouses at Scotts Hill, Parsons, and/or such other site or sites as it may select. 186 Tenn. at 23, 207 S.W.2d 1015.

In the most recent case written by Mr. Chief Justice Burnett, for the Court, of *Lamb v. State ex rel. Kisabeth,* 207 Tenn. 159, 338 S.W.2d 584 (1960), it was held that upon the issuance of school construction bonds the authority of the quarterly county court ends and it has thereafter no authority or jurisdiction over the way the money is spent, the selection of the sites, and the erection of school buildings.

This case, therefore, is conclusive of the issues herein raised and supports fully the action of the chancellor in sustaining the demurrer. However, out of deference to the sincere efforts and attitude of the appellants, as set forth in the brief, we discuss two cases relied upon by the appellants of *State v. True,* supra, and *Seeber v. Watlington,* 192 Tenn. 521, 241 S.W.2d 553 (1951), and we understand these cases to hold that the power to bring suit *in the proper cases* is vested in the quarterly county court as opposed to the county judge. The True case states further:

The quarterly court of Robertson county had no power to employ counsel and procure a suit to be brought to prevent a misappropriation of the public school funds

in the hands of the trustee of the county. * * * The public school funds in the hands of the trustees of counties are not the property of the counties and their authorized agents have no control over them. 116 Tenn. at 309, 95 S.W. 1031.

Though it is not clear in the True case whence the "public school funds" came, it is clear that these cases give no support to the proposition that a quarterly county court has power to rescind a contract made by the county school board involving the use of county school funds.

■ Ordinarily the protection of school funds in the hands of county trustees or county boards of education is exclusively the duty of the State Commissioner of Education. This is the holding of *State ex rel. Banks v. Taylor,* 199 Tenn. 507, 287 S.W.2d 83 (1956), where attorneys for a county school board were not allowed fees out of county funds in a suit procured by the school board. This is also the holding of *Garner v. Scales,* 183 Tenn. 577, 194 S.W.2d 452 (1946), where a county school board was not allowed to recover misappropriated funds from the county trustee. The holdings in these cases are based on T.C.A. sec. 49-105(15) (1955):

Whenever it shall appear to the commissioner of education from the report of any school official or from any other reliable source that any portion of the school fund has been lost, misappropriated, or in any way illegally disposed of, or not collected, or is in danger of loss, misappropriation, illegal disposition or failure of collection, it shall be the duty of the commissioner to call upon the district attorney or county judge or chairman of the county court, or the county attorney, to protect, recover, or force collection of such funds, pro-

vided the governor shall first give his approval to such action.

The commissioner shall have authority to send a supervisor or supervisors as herein provided for to any county to make investigation of public school accounts, records, and files of any county official handling school funds or administering the public school system and to enforce all school laws and regulations of the commissioner of education; provided, this duty of the commissioner shall not be exercised until after the county board of education shall have requested such investigation.

In line with this statute, it has been suggested that in any case where a superintendent finds the school budget to have been exceeded, he should report it to the commissioner of education—if there is no emergency—who will then refer the question to the Judicial Department of the State for appropriate legal action. *Little v. Carter County Bd. of Education*, 24 Tenn.App. 465, 146 S.W.2d 144 (1940).

In 1957 the statute was amended by adding these sentences to the first paragraph:

This provision, however, shall not prohibit suits by one political subdivision against another political subdivision in the same county, or against the county, when the consent of the state commissioner of education and the governor has not been obtained. The state commissioner of education, with the consent of the governor and with the approval of the attorney general, is hereby authorized to employ private legal counsel in order to protect, recover, or force collection of any school funds. T.C.A. sec. 49-105(15) (1964 Supp.).

In *Board of Education of Memphis City Schools v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569 (1960), this Code section, as amended, was cited (207 Tenn. at 357), allowing the Board of Education of the Memphis City Schools to seek a declaratory judgment challenging the constitutionality of a private act as being in conflict with the General Education Act of the State. The opinion of the Court, in effect, states that T.C.A. sec. 49-105(15), as amended, would not even be applicable since funds inequitably distributed under the allegedly unconstitutional private act were local school funds rather than State school funds, and for that reason alone it was unnecessary to join the commissioner of education in the suit. Appellants have cited this case to uphold the Quarterly Court's right to sue. They also cite *State ex rel. Dyer County v. Mayor and Aldermen of Dyersburg,* 191 Tenn. 661, 235 S.W.2d 814 (1951), which involves a similar challenge as in the Memphis case, but in the Dyer case the commissioner of education was joined.

It is our opinion that these cases lend no support to appellants' argument. The county (or city, as the case may be) board of education was the party complainant in these cases—not the quarterly court. The Memphis case recognizes "it to be the plain duty of any such Board to exercise every legal means for the protection and preservation of funds that may belong to the school system which it operates." 207 Tenn. at 358, 359, 339 S.W.2d.

The cases cited previously in this opinion showing the limitations of power on the quarterly courts of the State are ample authority for denying these courts power to control, protect and preserve school funds once they have been appropriated. Since the quarterly court has no power to control or protect school funds after appropria-

tion, it should obviously also be powerless to institute suit for that purpose. The 1957 amendment to T.C.A. sec. 49-105(15) does not give them this power, but rather does not disallow suits by political subdivisions which otherwise can control the field of operation that is involved in the suit.

Also, as the Memphis case indicates, T.C.A. sec. 49-105 (15) does not apply where there are only purely county funds in question. Appellants state in their original bill that the funds in controversy were appropriated by a county bond issue, and so are purely county funds.

In view of the authority cited above, we have no alternative except to hold that the Quarterly Court in this case has no authority to maintain this cause of action. Since the school building proposed was to be financed by a bond issue, we think the above cases are controlling. It is clear that the Legislature chose to give the Board of Education a free reign of authority concerning the matters complained of in this bill.

Our holding here is limited to the proposition that the Quarterly County Court of Putnam County has not been given authority by the Legislature to bring suit under facts as they appear herein. We have not ruled upon the question of whether competitive bidding was required in the situation as shown by the record in this case.

Affirmed.

BURNETT, CHIEF JUSTICE, and DYER and CHATTIN, JUSTICES, concur.