# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 31, 2000 Session

## RUTHERFORD COUNTY BOARD OF EDUCATION v. RUTHERFORD COUNTY COMMISSION, ET AL

### Appeal from the Chancery Court for Rutherford County
#### No. 99CV-745    Robert E. Corlew, III, Chancellor

---

### No. M1999-00288-COA-R3-CV - Filed October 20, 2000

---

This is a declaratory judgment action on undisputed facts. The question for disposition is whether the Public Building Authorities Act of 1971 authorizes the Rutherford County Commission to direct the Rutherford County Public Buildings Authority to hire architects, select a contractor and prepare school building design plans for presentation to the Rutherford County School Board. The trial court held that it is the responsibility of the Rutherford County Board of Education to plan, locate, erect and furnish public schools in Rutherford County and that the Rutherford County Commission was without authority to direct the Rutherford County Public Buildings Authority to act in this respect. We affirm the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

James G. Thomas, Nashville, Tennessee, for the appellants, Rutherford County Commission, Rutherford County Public Building Authority, and Nancy Allen.

Christopher D. Cravens, Charles W. Cagle, Nashville, Tennessee, for the appellee, Rutherford County Board of Education.

### OPINION

In the recognized hierarchy of government in Tennesseee, it is settled

> [t]hat the state of Tennessee is a sovereign and independent power, except so far as it is restrained by the Constitution of the United States; that its legislature has unlimited power of legislation, except so far as it is restrained by the Constitution of the United States and the Constitution of the state of Tennessee; that it has always been held, and never denied, that the power to create corporate bodies for all municipal

purposes, and with the means of self-government, is a legitimate exercise of sovereignty on the part of the state by its legislature; and that there is nothing in the Constitution of the United States, or of the state, restraining or prohibiting the exercise of such power by the state.

*Hope v. Deaderick*, 27 Tenn. (8 Hum.) 1, 8-9 (1847).

Counties, on the other hand, are creatures of legislation and governments of very limited powers.

ACounties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impress all liabilities to which they are subject.@ *Burnett v. Maloney*, 97 Tenn. 697, 712-13, 37 S.W. 689, 693 (1896).  AThey possess no powers except such as are conferred expressly or by necessary implication, and these are strictly construed, and must be strictly pursued.@ *McDaniel v. Monroe County*, 10 Tenn. App. 109, 117 (1929).

It is further said in this respect: AThis court, speaking of the power of county courts, further has held that the powers intrusted to the county courts emanate from the Legislature alone; hence when a power claimed for them is not conferred it must be held not to exist.@ *Wright v. State*, 171 Tenn. 628, 637, 106 S.W.2d 866, 869 (1937); *see also Shelby County v. Tennessee Centennial Exposition Co.*, 96 Tenn. 653, 36 S.W. 694 (1896).

Central to the issue in this case is the recognition that providing education is a constitutionally mandated state function.

No doubt exists that providing education is a State function.  Not only does Article XI, ' 12, of the Tennessee Constitution expressly require the General Assembly to Aprovide for the maintenance, support and eligibility standards of a system of free public schools,@ but this Court has recognized for many years that education is a State function.  *E.g., State ex rel. Harned v. Meador*, 153 Tenn. 634, 637, 284 S.W. 890, 891 (1925).  The General Assembly has enacted a comprehensive and detailed statutory scheme concerning education in this State, compiled in Title 49 of the Tennessee Code and comprising an entire volume of that code.  An examination of this statutory scheme clearly reveals that a partnership has been established between the State and its political subdivisions to provide adequate educational opportunities in Tennessee.  At the county level, the State has divided the responsibilities allocated to the counties between the county board of education and the county legislative body.  While the local board of education has exclusive control over many operational aspects of education policy, subject to the rules and regulations of the State Department of Education, the county legislative body has the authority to appropriate the funds necessary to carry out the county education program.

*State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221-22 (Tenn. 1988).

The Rutherford County Commission consists of 21 members duly elected by the voters of Rutherford County. In the wake of the Aone man, one vote@ electoral apportionment principle, enunciated by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186 (1962), the constitutionality of the membership apportionment schemes of local school boards was called into serious question and the General Assembly responded with Chapter 252 of the Tennessee Public Acts of 1967. This Act abolished local school boards whose membership apportionment schemes were constitutionally infirm and created new Aboards of education@ consisting of 7 members elected by popular vote of the citizens of the county. This Act was followed by Chapter 454 of the Tennessee Private Acts of 1967 applicable to Rutherford County. Section 1 of this Private Act provided: AThat the government, supervision, and control of public schools of Rutherford County shall be vested in the seven-member Board of Education created by Chapter No. 252, Public Acts 1967, to be elected by the qualified voters of Rutherford County as hereinafter provided.@ 1967 Tenn. Priv. Acts 454 ' 1.

Chapter 252 of the Public Acts of 1967 granted to the local boards of education power to Aexercise all of the rights, duties, powers, and privileges@ and Adischarge all of the duties and obligations imposed upon the school boards@ by their private acts. 1967 Tenn. Pub. Acts 252 ' 3. Section 10 of Chapter 454 of the Private Acts of 1967 provided in pertinent part as follows:

> That the County School Board shall have the responsibility for the government, supervision and control of the public schools of the County, provided, however, that no Board member shall have authority to act independently on any school matter. The Board shall generally exercise all powers, duties and privileges as set forth in the public laws of Tennessee relative to County Boards of Education and specifically discharge those duties enumerated in Section 49-214 and Section 49-215 Tennessee Code Annotated, [now codified as Tennessee Code Annotated section 49-2-203(a), (b)] which are not in conflict with the provisions of this Act.
>
> * * *
>
> It shall be the duty of the Board to plan for the extension and development of the County School System; to determine the need for new buildings; to plan, locate, erect, and furnish the same, after the Quarterly County Court [county commission] shall have provided funds for same.

The appellee, Rutherford County Board of Education, is thus a 7 member Board elected by the voters of Rutherford County to exercise the powers previously held by local school boards and now vested in said Board of Education by Chapter 252 of the Public Acts of 1967 and Chapter 454 of the Private Acts of 1967. By Chapter 126 of the Public Acts of 1971, the General Assembly enacted the APublic Building Authorities Act of 1971@ now codified as Tennessee Code Annotated sections 12-10-101 to -124. Pursuant to this 1971 statute, the County Commission of Rutherford County adopted a resolution under Tennessee Code Annotated section 12-10-104 (1999), creating the Rutherford County Public Building Authority.

THE CONTROVERSY.

The Aturf war@ between the Rutherford County Commission and the Rutherford County Board of Education obviously began well before the pivotal events of mid-May 1999. As early as January 29, 1999, on request of Senator Andy Womack, the Attorney General issued opinion No. 99-015 answering the question, ADoes the Rutherford County Commission have the authority to unilaterally transfer from the county school board to the public building authority[,] or any other agency[,] the school board=s duties regarding school location, design and construction?@ Op. Tenn. Att=y Gen. 99-015 (Jan. 29, 1999). Relying on Chapter 454 of the Private Acts of 1967 and citing *Mosier v. Putnam County Quarterly Ct.*, 216 Tenn. 655, 659-62, 393 S.W.2d 734, 735-36 (1965), the Attorney General opined: AThe Rutherford County Commission does not have the authority to transfer from the county school board to the county public building authority, or any other agency, the school board=s duties regarding school location, design and construction.@ *Id.*

At the behest of the Rutherford County Commission, Senator Womack again inquired of the Attorney General posing two questions:

> 1.    Notwithstanding the legal duties and responsibilities set forth in Tennessee Code Annotated and the Private Acts of Rutherford County for the Board of Education in school building programs, is the local Board of Education permitted and authorized by law to engage and utilize the Public Building Authority to select sites, design and construct school buildings and facilities?
>
> 2.    If so, is the local Board of Education authorized to sign and enter into contracts with the Public Building Authority wherein the Public Building Authority would be delegated the responsibility for the site selection, design and construction of school buildings and facilities, including the employment of architects, engineers and other professionals necessary to facilitate and implement the design and construction of school facilities?

Op. Tenn. Att=y Gen. 99-094 (April 12, 1999). To this inquiry, the Attorney General responded asserting:

> The Rutherford County Board of Education has the authority to contract with the Public Building Authority to accomplish the design, site acquisition and construction of a new school but in any such contract must retain approval authority over the project and may not delegate its statutory duty to operate the county school system, including the decision whether a new school is needed, where it shall be located, and responsibility to insure that it is designed and constructed to meet the needs of the system.

*Id.*

In his analysis of the questions posed in opinion 99-094, the Attorney General began by recognizing that the Board of Education had no inherent power and thus, Awe are unable to look at

-4-

these questions ›notwithstanding the legal duties and responsibilities set forth in Tennessee Code Annotated and the Private Acts of Rutherford County for the Board of Education.‹ Without these sources, the Rutherford County Board of Education would have no powers over school construction.@ *Id.*

It is against this background that the actions of the Board of Education and the County Commission of May 11 and May 13, 1999 brought about this suit for declaratory judgment. The Rutherford County Board of Education met in special meeting May 11, 1999 with the Minutes of the meeting reflecting that A[t]he purpose of the meeting was to discuss The New School Construction Agreement.@ These minutes further read as follows:

> Motion by Mr. Delbridge, seconded by Mr. Hooper, to approve the Memorandum of Agreement regarding New School Construction between the Rutherford County Board of Education and the Rutherford County Commission as recommended by the Capital Projects Committee.
>
> Roll Call Vote: Yes - Mr. Delbridge, Ms. Hellum, Mr. Hooper, Mr. Lee, Mr. Patton, Mrs. Pinkston, Mr. Wyre

Minutes of Special Meeting, Rutherford County Bd. of Educ. (May 11, 1999).

The proposed AMemorandum of Agreement@ thus adopted by the Board of Education in this May 11 special meeting provided:

MEMORANDUM OF AGREEMENT

regarding

NEW SCHOOL CONSTRUCTION

between

THE RUTHERFORD COUNTY BOARD OF EDUCATION

and the

RUTHERFORD COUNTY COMMISSION

A recommended plan for future new school construction is outlined below. The plan conforms to the language of the recently requested Attorney General opinions as well as the County Budgeting Act. The plan calls for the Board of Education, the County Commission and the Public Building Authority to work together to assure the best quality schools for the lowest cost possible.

The tenets of the plan are as follows:

♦ The Rutherford County Board of Education will retain responsibility and authority for the selection of the site, design, and construction of the new schools.

♦ The hiring of architects or engineers for new school construction shall be considered by a panel of three (3) members of the Board of Education selected by the Chairman of the Board and three (3) members of the Public Building Authority. This panel will recommend their selection to the Board of Education for approval.

♦ After the selection of the architect/engineer, the Public Building Authority shall select a general contractor through either (1) negotiation or (2) bidding process. If the bidding process method is used, the choice will be sent to the Board of Education for approval and to the County Commission for funding. If a contractor is chosen through the negotiation process, the Guaranteed Maximum Price (GMP) will be recommended to the Board of Education for approval and then to the County Commission for funding.

♦ The panel of Board of Education members and Public Building Authority members mentioned above shall work with the selected architect and contractor (if the contractor is selected through a negotiation process) or the architect through the design of the building (if the contractor is selected through the bidding process) to determine Avalue engineering@ components in an effort to save costs. These items shall be presented to the Board of Education for approval.

♦ Once the price has been established, a contingency of either ten percent (10%) of the Alowest bid@ Construction Contract Price or one hundred fifty thousand dollars ($150,000) of the Guaranteed Maximum Price (GMP) contract shall be approved by the Rutherford County Commission to cover change orders during the construction of the new school project.

♦ Change orders totaling five thousand dollars ($5,000) or less, may be approved by the Assistant Superintendent of Schools for Engineering and Construction and a representative of the Public Building Authority. Change orders exceeding the five thousand dollar ($5,000) limit shall be presented to the Public Building Authority and then to the Board of Education for approval.

♦ If it appears that the contract cost plus the established contingency will be exceeded by the approval of any change order, such change order must first be presented to the Public Building Authority, then to the Board of Education and finally to the County Commission for funding.

♦ The Assistant Superintendent of Schools for Engineering and Construction, and other Board of Education staff as deemed appropriate, shall inform the Public Building Authority and the Board of Education monthly regarding the progress of the construction projects.

♦ Invoices for payment shall be signed by the Assistant Superintendent of Schools for Engineering and Construction and the designated representative of the Public Building Authority prior to being forwarded to the Board of Education Finance Office and finally to the County Finance Office for payment.

♦ In order to initiate this new plan in good faith, all prior invoices for architectural and/or design services currently pending before the Board of Education and incurred prior to the date of this plan shall be paid. If necessary, funds for payment of those invoices shall be transferred from dollars identified within the line items of

the budget of the Board of Education and such transfers shall receive the approval of the County Commission.

This Plan was approved by the unanimous vote of the Board of Education on May 11, 1999.

Legislative Minutes on Item K.2., Rutherford County Bd. of Comm=n (May 13, 1999).

When the Rutherford County Commission met on May 13, 1999, a motion to accept the AMemorandum of Agreement@ proposed by the Rutherford County Board of Education was rejected by a vote of 16 to 4, with one member absent.  Following rejection of the AMemorandum of Agreement@, these Minutes of the May 13 meeting reflect:

<u>ITEM K. 4.</u>

<u>PBA TO ENTER INTO A CONTRACT WITH ARCHITECT TO BUILD SCHOOLS</u>.

<u>MOTION</u>

Commissioner Steve Johns moved, seconded by Commissioner Allen McAdoo, to bring back the original motion as amended, which was originally withdrawn, as follows:

I would like to offer the following compromise in the form of a motion:

1.      Authorize the PBA to enter into a contract, not to exceed $1 million dollars, with an architect or architects for design of :

        Seigel Middle School
        Walter Hall Elementary
        Blackman Elementary

3.      The PBA will further select a contractor(s), develop design plans, and present the design plans (preliminary and final) to the School Board so that they may exercise their - APPROVAL AUTHORITY - as set forth by the Attorney General=s opinion dated April 21, 1999.  Also, this commission hereby goes on record prepared to appropriate funding to construct:

        Seigel Middle School
        Walter Hall Elementary
        Blackman Elementary

        with construction costs to be negotiated by PBA.

<u>AMENDMENT</u>

To ask that the funds be taken from General Purpose reserves in order not to share the funds with the City of Murfreesboro and if declined by the School Board that it would then be funded by Capital Outlay Notes.

<u>UPON ROLL CALL, THE FOLLOWING COMMISSIONER VOTED:</u>

TOTAL (FOR) VOTE: (20)

David T. Gammon, Hollis Lindell Vaughn, Grant Kelley, Robert Peay, Carol Cook, Joe Frank Jernigan, Gary Farley, Steve Sandlin, Anthony Johnson, Steve Johns, Richard W. Sage, Paul Johnson, Jerry Baxter, Faye Elam, Bob Bullen, Jimmy Evans, Allen McAdoo, Joyce J. Ealy, Trey Gooch, Tina Jones

TOTAL (AGAINST) VOTE: (00)

None

TOTAL (ABSENT) VOTE: (01)

Dwight Throneberry

MOTION AS AMENDED ADOPTED BY ROLL CALL VOTE.

Legislative Minutes on Item K.4., Rutherford County Bd. of Comm=n (May 13, 1999).

Thus, the Aturf war@ reached an impasse and the Board of Education sued for a declaratory judgment that the action on Item K.4. reflected in the Rutherford County Commission=s Legislative Minutes from this May 13, 1999 meeting was invalid.

The Complaint in chancery for declaratory judgment was met by a Motion to Dismiss under Rule 12.02(6) Tennessee Rules of Civil Procedure for failure to state a claim upon which relief could be granted. On August 9, 1999, the learned chancellor overruled the Motion to Dismiss and, applying section 10 of Chapter 454 of the Private Acts of 1967, entered Declaratory Judgment in favor of the Rutherford County Board of Education holding the County Commission=s action of May 13, 1999 to be invalid. Said the chancellor:

> Defendants argue that the County Commission=s action is permitted by Tenn. Code Ann. ' 49-2-201(7) or by the Public Building Authorities Act of 1971, Tenn. Code Ann. ' 12-10-101 et seq., or both. The Court disagrees, and finds that the hiring [of] architects and contractors is a planning function within the scope of duties of the Board of Education, not the County Commission.
>
> The Public Building Authority can have a role in the school construction process. The Board of Education has the authority to decide the role of the Public Building Authority in its school construction projects. The County Commission has the opportunity to fund, partially fund, or not to fund the buildings which are planned by the Board of Education.
>
> Accordingly, it is hereby ORDERED, ADJUDGED and DECREED that judgment on the Motion to Dismiss is granted in favor of Plaintiff Rutherford County Board of Education and against the Defendants Rutherford County Commission, Rutherford County Public Building Authority and County Executive Nancy Allen.

As judgment on the Motion to Dismiss is dispositive of all issues pending in this cause, the entry of this Order shall constitute the Final Order.

Timely notice of appeal was filed by the defendants.

ANALYSIS

In construing the provisions of Chapter 115 of the Public Acts of 1925, which was an act to establish and maintain a uniform system of public education and was the genesis of much of Title 49 of the Tennessee Code, the Supreme Court observed: AThe Act contemplates reasonable cooperation between the revenue spending governmental agencies, of which the county board of education is one, and the revenue raising governmental agencies, of which the quarterly county court is another. Without such coordination there would be great confusion in the fiscal affairs of the counties.@ *State v. Polk County*, 165 Tenn. 196, 200, 54 S.W.2d 714, 715-16 (1932).

The lack of reasonable co-ordination and cooperation between the Rutherford County School Board on the one hand and the Rutherford County Commission on the other, if the parties allow it to continue, can place the state government in an untenable position since public schools are a constitutionally mandated state responsibility under Article XI, section 12 of the Tennessee Constitution. Having legislatively created the Board of Education, and having legislatively empowered the County Commission, the state is not helpless. The Board of Education, having been created by statute, can perish by statute, and it is long settled that by a stroke of the legislative pen the General Assembly may strip the County Commission of all of its non-constitutional powers. *See Prescott v. Duncan*, 126 Tenn. 106, 148 S.W. 229 (1912); *Shelby County Bd. of Comm=rs. v. Shelby County Quarterly Ct.*, 216 Tenn. 470, 392 S.W.2d 935, (1965).

Even prior to Chapter 115 of the Public Acts of 1925, the Supreme Court of Tennessee had observed that Athe supervision and control of the schools of the county, the employment of teachers, the fixing of salaries, erecting of buildings, etc., is entirely taken from the county court and vested in the county board of education.@ *State ex rel Boles. v. Groce*, 152 Tenn. 566, 569-70, 280 S.W. 27, 28 (1926).

In 1948, the Tennessee Supreme Court observed that under the statutory scheme now codified in Title 49 of the Tennessee Code, the county court has neither constitutional nor statutory authority relative to the erection, furnishing and equipping of school buildings. *Bandy v. State, ex rel. Bd. of Educ. of Sullivan County,* 186 Tenn. 11, 17-18, 207 S.W.2d 1011, 1013 (1948).

As the chancellor held, Chapter 454 of the Private Acts of 1967, implementing as it did the provisions of Chapter 252 of the Public Acts of 1967, plainly provides in section 10 thereof: AIt shall be the duty of the Board to plan for the extension and development of the County School System; to determine the need for new buildings; to plan, locate, erect, and furnish the same, after the Quarterly County Court shall have provided funds for same.@ 1967 Tenn. Priv. Acts 454 ' 10.

This provision implements the purposes of Chapter 252 Section 3 of the Public Acts of 1967 (now codified as section 49-2-111(c) of the Code) wherein it is provided that said A[b]oards of education created and established under the provisions hereof shall have and possess and shall exercise all of the rights, duties, powers and privileges and shall discharge all of the duties and obligations imposed upon the school boards, school commissions, boards of education or other agencies governing the school affairs of the counties by any such private act applicable to the counties.@ Tenn. Code Ann. ' 49-2-111(c) (1996).

The position of the County Commission before the Court centers around the Public Building Authorities Act of 1971, now codified as Tennessee Code Annotated sections 12-10-101 to -124. The County Commission asserts that this Act authorized the action taken by the County Commission of May 13, 1999 whereby the Public Building Authority was directed by the Commission to contract with architects for the design of three schools, select a contractor, and develop design plans for these schools. The Commission further asserts that, by the specific terms of the Public Building Authorities Act and principles of statutory construction, the Act supercedes any conflicting provisions of Chapter 454 of the Private Acts of 1967. Finally, the Commission asserts that the May 13th resolution does not run afoul of the Tennessee General Education Law. Each of these contentions is without merit.

First of all, it is not asserted by any party to this action that the Public Building Authorities Act of 1971 authorizes a Amunicipality@ to create an entity (Public Building Authority) capable of supplanting and superceding both the creating Amunicipality@ and, in this instance, the Amunicipal corporation@ involved.[1] The Public Building Authority is a servant, not a master, of a municipal corporation. As the Attorney General correctly opined:

> The Public Building Authorities Act provides an alternative method to construct public buildings furnishing educational public services. Tenn. Code Ann. ' 12-10-102(a). The Act is remedial and should be liberally construed to effectuate its purposes. Tenn. Code Ann. ' 12-10-102(b). The Act give specific authority to contract.

---

[1] Under Tennessee Code Annotated section 12-10-103, Amunicipal corporation@ and Amunicipality@ are specifically defined. A >Municipal corporation= means any county, metropolitan government, incorporated city or town, utility district, school district, power district, sanitary district or other municipal, quasi-municipal or governmental body or political subdivision in this state, and any agency, authority, branch, bureau, commission, corporation, department or instrumentality thereof now or hereafter authorized by law to be created; >Municipality= means any county or incorporated city or town in this state with respect to which an authority may be organized.@ Tenn. Code Ann. ' 12-10-103(7),(8)(1999).

The Act allows all Amunicipal corporations@ to contract or enter into a lease or loan agreement with a public building authority. Tenn. Code Ann. ' 12-10-116(a)(1998 Supp.) states in relevant part as follows:

> Any municipal corporation is authorized to enter into such leases, loan agreements, sales contracts or operating contracts by resolution of its governing body . . . with an authority or other contracting party with respect to projects or parts thereof, for such term or terms and upon such conditions as may be determined by such governing body, board or commission, as appropriate, notwithstanding and without regard to the restrictions, prohibitions or requirements of any other law, whether public or private.

A school board is a Amunicipal corporation@ as defined by the Act. Under the Act, the term Amunicipal corporation@ means

> any county, metropolitan government, incorporated city or town, utility[] district, school district, power district, sanitary district or other municipal, quasi-municipal or governmental body or political subdivision in this state, and any agency authority, branch, bureau, commission, corporation, department or instrumentality . . . .

Tenn. Code Ann.' 12-10-103(7)(1998 Supp.).

Op. Tenn. Att=y Gen. 99-094 (April 21, 1999).

As this Court has observed: AWe think that the purpose of the Act is clear, i.e., to provide counties, municipalities, and boards of education the means to accomplish goals that are not available directly to those entities.@ *Shankle v. Bedford County Bd. of Educ.,* No. 01A01-9609-CH-00387, 1997 WL 83662, at * 5 (Tenn. Ct. App. Feb. 28, 1997).

The Public Building Authority thus, under its enabling Act, has no power independent of a contract with a Amunicipal corporation@. The Act of 1971, as amended, does not purport to either expand or diminish the powers of a Amunicipal corporation@ whether that municipal corporation be a county acting through its county commission or a school district acting through its board of education. There is simply no conflict between the Public Building Authorities Act of 1971, Chapter 454 of the Private Acts of 1967, or Title 49 of Tennessee Code Annotated. Indeed, if the ambiguity of language inherent in the extensive verbiage of Code sections 12-10-101 to -124 did conflict with the extensive provisions of Title 49, the conflict would be resolved consistent with Title 49. *See,* Tenn. Code Ann. ' 1-3-103 (1994).

In the context of this case, the only Amunicipal corporation@ empowered by the legislature to contract with the Public Building Authority to plan for the extension and development of the county

school system and to implement the location and erection of the schools in issue is the Rutherford County Board of Education. As the Attorney General correctly opined, Athe Rutherford County Commission does not have the authority to transfer from the county school board to the county public building authority, or other county agency, the school board=s duties regarding school location, design and construction.@ Op. Tenn. Att=y Gen. 99-015 (Jan. 29, 1999).

CONCLUSION

The Chancellor was clearly correct in declaring the action of the Rutherford County Commission reflected in Item K.4. in the Minutes of its May 13, 1999 meeting invalid.

The judgment of the trial court is in all respects affirmed, and the case is remanded to the trial court for such further proceedings as may be helpful to the parties in breaking this impasse, as the Court possesses neither the authority to control the Rutherford County Board of Education in its statutory duties concerning the school system, nor the authority to compel the Rutherford County Commission to provide the funds to implement the decisions of the Board of Education. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217 (Tenn. 1988).

Costs of this cause are assessed against the Rutherford County Commission.

_____
WILLIAM B. CAIN, JUDGE