STATE *ex rel.* J. L BOLES *v.* BEN E. GROCE, COUNTY SUPERINTENDENT.*

(*Nashville.* December Term, 1925.)

1. **COUNTIES.**

   The members of the county board of education, created under Acts 1921, chapter 120, are county officers. (*Post, pp.* 569-571.)

2. **COUNTIES.** Justice of peace may contract with county board of education to teach school (Acts 1921, chapters 2, 40, 120; Shannon's Code, sections 1133-1135.)

   In view of Acts 1921, chapter 2, 40, 120, entirely taking from the county court all power of supervision and control of county schools and vesting it in county board of education, contract of board with justice of the peace to teach school is not invalidated by Shannon's Code, sections 1133, 1134, 1135. (*Post, pp.* 569-571.)

   Acts cited and construed: Acts 1921, chs. 2, 40, 120.

   Case cited and approved: State ex rel. v. Jones, 224 S. W., 1041.

   Case cited and distinguished: Hope v. Hamilton County, 47 S. W., 488.

   Code cited and construed: Secs. 1133, 1134, 1135 (S.).

---

*Headnotes 1. Counties, 15 C. J., Section 139; 2. Counties, 15 C. J., Section 270.

---

FROM PICKETT.

---

Appeal from the Chancery Court of Pickett County. —HON. W. R. OFFICER, Chancellor.

E. D. WHITE, C. J. CULLOM and S. M. TURNER, for appellant.

E. C. KNIGHT, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill seeks by mandamus to compel the defendant, as county superintendent, to sign a warrant payable to the relator out of the school funds of the county for the sum of $245.40.

The county board of education employed relator to teach one of its schools, and the bill alleged that the above named sum was due him for such services, and that said board authorized its payment, but that the superintendent declined to draw his warrant for same, giving as his reason that the contract of employment was illegal because relator was one of the justices of the county at the time of the employment and during the term that his services were rendered.

As we view the cause, it is only necessary to answer one question, and that is: Can a county board of education lawfully contract with one of the justices of the county to teach one of its schools?

The following sections of Shannon's Annotated Code are invoked by defendant, to-wit:

Section 1133. "It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any public municipal corporation, county, or the State, shall or may be interested, to be directly or indirectly interested in any such contract."

Section 1134. "Should any person, acting as such offi

cer, committeeman, director, or other person above referred to, be or become directly or indirectly interested in any such contract, he shall forfeit all pay and compensation therefor.''

Section 1135. ''Such officer shall be dismissed from such office he then occupies, and be ineligible for the same or a similar position for ten years.''

Before discussing these statutes we deem it proper to review the school system of the State, as it existed at the time the contract in question was executed, and to determine the relation of the county court thereto.

Under the provisions of chapter 120, Acts of 1921, all existing boards were abolished, and all public schools in the county, both elementary and high schools, were placed under the management and control of a county board of education, consisting of seven members, to be elected by the quarterly county court at its July, 1921, session, one for one year, one for two years, etc. Each year thereafter one member is to be elected for seven years.

The fifth section of said act provides:

''That it shall be the duty of the county board of education, and it shall have power to:

''1. Hold regular quarterly meetings on the third Saturday of September, December, March, and June for the purpose of transacting all public school business; provided, that the chairman may call a special meeting or meetings, whenever, in his judgment, the interests of the public schools require it or when requested to do so by a majority of the board.

''2. Elect and assign all teachers, fix their salaries, locate, build, repair, furnish and keep in sanitary con-

dition the school houses, fix all wages, employ janitors and such other persons as may be necessary to take care of the school property and carry on the educational interests of the county; provided that the purchase of all supplies, furnitures, fixtures and material of all and every kind shall be made through a purchasing committee, which committee shall be appointed by the chairman, and it is expressly provided that all expenditures for building purposes, repairs, school supplies, etc., amounting to fifty dollars or more shall be let on competitive bids.

"3. Continue all schools of the county as nearly as practicable the same length of time. If the daily attendance of any school shall fall below the minimum fixed by the county board of education for as much as two consecutive weeks, that school shall be suspended until an attendance can be assured of not less than one-third of the pupils within the territory of the said school, and in any case the said minimum shall not be less than one-third of the pupils belonging to said school; provided, that any school in which the average daily attendance for ten days below the minimum fixed by the county board of education, which in no case shall be less than ten shall be discontinued."

Under chapters 2 and 40 of the Acts of 1921, annual reports are to be made by said board and the county superintendent to the quarterly county court as to the sums necessary to run the schools for the ensuing year, and the court is then to provide the necessary funds by levying a tax.

It will thus be seen that the supervision and control of the schools of the county, the employment of teachers,

the fixing of salaries, erecting of buildings, etc., is entirely taken from the county court and vested in the county board of education. The members of this board are county officers. *State ex rel.* v. *Jones,* 224 S. W., 1041, 143 Tenn., 577.

The county court has nothing to do with the fixing of salaries or the employment of teachers, and, should the board act contrary to its wishes in such matters, it has no power to review or supervise its action.

The county court necessarily has to levy a tax for creating needed school funds, because it is the only agency clothed with such power, and this duty is enjoined upon it by the State.

In view of the foregoing, we are of the opinion that the relator did not contract with the county within the spirit and intent of the statutes invoked.

The purpose of these statutes was thus stated by this court in *Hope* v. *Hamilton County,* 47 S. W., 488, 101 Tenn., 331:

"It is the policy of the law to prohibit members of the county court, and of municipal councils generally, from making contracts with their own members for any purpose which calls for compensation out of the public treasury. The theory is that the same individuals shall not authorize a contract, fix compensation for it, and elect or appoint one of their own members to execute it, and then receive pay therefor, no matter how well a member may be fitted for the particular service."

The county board of education is a separate and distinct entity from that of the county court, created by the State, with well defined powers and duties, over which the county court has no supervisory jurisdiction. Hence

the county court had nothing to do with the letting of this contract, or the manner of its performance, and the relator, as a member of the county court, did not contract with himself.

We are unable to see how a county can be injured or imposed upon, where the board of education employs a person to teach in its schools who is competent and otherwise qualified, simply because he happens to be a justice of the peace of the county.

Here the relator was employed to teach a particular school for three and three-fourths months at .$65 per month; and, presumably, he properly performed his contract, because the board of education directed its secretary to issue a warrant to him for his salary and they are the judges in such matters.

In our opinion, the trial court was in error in holding the contract unlawful, and his decree will be reversed and the relief prayed for in the bill will be granted, including interest from June 2, 1924, the date on which the bill was filed.