STATE *ex rel. v.* BROWN.

(*Knoxville,* September Term, 1953.)

Opinion filed July 23, 1954.

(1)

Taylor & Badgett and Marne S. Matherne, both of Knoxville, for plaintiff in error.

McCluen & Cooley, of Rockwood, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a quo warranto proceedings wherein there is sought an adjudication that Tom (Tommy) Brown, defendant-in-error here, vacated his office as a Justice of the Peace of Roane County when he was inducted into office as a member of the public road commission for that county under Chapter 470 of the Private Acts of 1951 at a salary of $160 per month. It is from the judgment of the Circuit Court sustaining a demurrer to the quo warranto petition that this appeal was taken by the original petitioners, the relators.

Relators insist that a Justice of the Peace is an inferior judge or court within the meaning of Article 6, Section 7 of our Constitution providing that such inferior judges ''shall not be allowed any fees or perquisites of office, nor hold any office of trust or profit under this State or the United States.'' Therefore, say relators, Brown vacated, as a matter of law, his office as Justice of the Peace when he accepted membership on the Board of Road Commissioners of Roane County.

A comparison of the provisions of our Constitution as to these inferior judges with the provisions in that

Constitution dealing with Justices of the Peace seems to indicate that those who drafted our Constitution did not consider a Justice of the Peace to be one of these inferior judges. It is unnecessary, however, to pursue such indication to a definite conclusion since the question here made is ruled by *Hancock* v. *Davidson County*, 171 Tenn. 420, 427, 104 S. W. (2d) 824, 826, wherein this Court, after quoting Section 7 of Article 6 of our Constitution, adds this:

"Obviously, a justice of the peace is not within the purview of this section of the Constitution since he has always been entitled to 'fees or perquisites of office.'"

The relators next insist that Brown vacated his office as Justice of the Peace by reason of Code Section 2986 providing that "no road commissioner shall be a member of said county court * * *."

Code Section 2986 is a part of the article dealing with the issuance by the counties of its bonds for highway purposes. The statute so authorizing is codified in that article commencing with Section 2962. It creates a road commission "for the purpose of carrying out the provisions of this article * * *". Code Section 2978. Code Section 2986 providing that no road commissioner shall be a member of the Quarterly Court refers to the commissioners created under this article for the purpose of carrying out the objects of that statute only. Hence, Code Section 2986 is not applicable here.

It is not quite clear as to why relators think Code Section 3278 supports their insistence heretofore stated. However, in the opinion of this Court that code section is not pertinent to our question. It simply provides that "authority is granted to each county * * * to create

a 'County Highway Commission' " etc. No county is required to follow the plan of road building, etc., provided by Code Section 3278 et seq. Therefore, since the building or maintenance of public roads is a governmental function of the county, it follows, as a matter of course, that the legislature may authorize Roane County to proceed under a different plan to build and maintain its public roads. *Hamilton County* v. *Bryant*, 175 Tenn. 123, 126, 132 S. W. (2d) 639.

 Finally, the relators invoke the common law rule that "where one accepts a second office incompatible with one already held by him, the office first held is thereby ipso facto terminated without judicial proceedings of any kind". *State ex rel. Little* v. *Slagle,* 115 Tenn. 336, 341, 89 S. W. 326, 327. This, of course, presupposes that the office of road commissioner under Chapter 470 of the Private Acts of 1951 is incompatible with that of the Justice of the Peace. The accuracy of this supposition must be determined in the light of the provisions of Chapter 470 creating this commission.

Chapter 470 provides that this commission "shall have complete supervision and control of the construction, maintenance and repairs of all public roads, highways and bridges in the County." Each commissioner is required to file each month with the chairman a statement of accounts owing and receivable, and sums expended with details, and the chairman must record these. All warrants drawn by a member of the commission must be countersigned by the chairman and a specified record filed in the office of the county court clerk for inspection by the public and "the Chairman will be required to make a detailed report of the same to each term of the Quarterly County Court."

The above résumé of the provisions of Chapter 470 makes it fairly clear that about the only authority or function which the Quarterly Court has with reference to the building or repairs of the public roads and bridges of the county is to levy the tax for the procurement of the necessary funds. That being true, the case is practically on all fours with *State ex rel. Boles* v. *Groce,* 152 Tenn. 566, 280 S. W. 27.

In the Groce case it was held that a member of the Quarterly Court may legally be elected by the Board of Education to teach in the public schools of the county. The Court based its ruling upon the fact that the Quarterly Court had no authority or function with reference to the operation of the public schools of the county other than to levy the tax for the procurement of the funds necessary for such operation.

For the sake of the case at bar it may be assumed that a school teacher is an employee, rather than an officer, of the county. Nevertheless, the principle involved here is the same in as much as the school teacher in the Groce case was a member of that Quarterly Court whose function it was to levy the tax for the operation of the schools. That is exactly the situation in the instant case in that the only function of the Roane County Quarterly Court of which Brown is a member is to levy the tax for the procurement of the funds for building and repairing the public roads and bridges.

Thus there seems to be no escape from the conclusion that the Groce case rules the case at bar, thereby making it necessary to hold that membership on that road commission of Roane County created by Chapter 470 of the Private Acts of 1951 is an office not incompatible with the office of the Justice of the Peace of said

county. In so holding attention is called to the fact that the statute authorizing the Board of Education to employ a member of the Quarterly Court as one of its teachers did not exist at the time of the holding in the Groce case. So that statute was only declaratory of already existing law.

The conclusion reached in the Groce case, and followed in this opinion, seems to be in keeping with the view entertained through the years by our General Assembly to the effect that Justices of the Peace are not regarded as being disqualified, ipso facto, from holding a lucrative county office. For instance our act of 1823, and carried since in our code, now at Section 683, provides that "nor shall any acting justice, who is also county trustee, vote on any question which may come before the county court touching the moneys in his hands as treasurer." The conclusive implication from this statute is that a Justice of the Peace may be county trustee.

The judgment of the Circuit Court will be affirmed with costs adjudged against plaintiffs-in-error.