# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 23, 2020 Session

## RONALD C. YOUNG v. E.T. STAMEY, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 18CH0073     M. Nichole Cantrell, Chancellor**

_____

### No. E2019-00907-COA-R3-CV

_____

This appeal concerns whether a city councilman is disqualified from office because he also is employed by his city's municipal school system. Ronald C. Young ("Young") ran against E.T. Stamey ("Stamey") for a seat on the Clinton City Council. Stamey, the incumbent, won. Afterward, Young filed suit in the Chancery Court for Anderson County ("the Trial Court") against Stamey as well as the Anderson County Election Commission and its members ("the Commission"). Young alleged that, pursuant to Tenn. Code Ann. § 7-51-1501 and the Clinton City Charter, Stamey is disqualified from being a city councilman because he works for Clinton City Schools ("CCS"), albeit in a noninstructional capacity. The Commission filed a motion for judgment on the pleadings, and Stamey filed a motion for summary judgment. The Trial Court granted both motions. Young appeals. We hold, first, that Stamey is not a city employee. We hold further that even if Stamey is a city employee, as a noninstructional public school employee he is allowed to run for city council pursuant to Tenn. Code Ann. § 49-5-301. Finally, we hold that Young failed to state a claim against the Commission, which acted solely in its ministerial capacity in certifying the election results. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

David A. Stuart, Clinton, Tennessee, for the appellant, Ronald C. Young.

Robert L. Bowman and Brandon L. Morrow, Knoxville, Tennessee, for the appellees, the Anderson County Election Commission and its individual members, Joseph Rainey, Chairman; Mary Matheny, Secretary; William Gallaher, D. Jane Miller, and William "Bear" Stephenson.

Tasha C. Blakney, Knoxville, Tennessee, for the appellee, E.T. Stamey.

# OPINION

## Background

On November 6, 2018, city council elections were held in Clinton, Tennessee. Young ran against Stamey, an incumbent, for one of the seats. Stamey won, receiving approximately 64% of the vote. On November 21, 2018, Young filed his Complaint to Contest Election, for Declaratory Judgment, and for Injunctive Relief in the Trial Court against Stamey and the Commission. In his complaint, Young alleged that "[a]t all times material hereto, defendant, E. T. Stamey, is and has been an employee of the Town of Clinton, Tennessee, in the athletic department of the town's public school system. . . ." Young asserted that Stamey was disqualified from holding office based on Article I, § 13, of the Charter for the Town of Clinton, Tennessee, which provides that "[a] vacancy shall exist if the Mayor or a Councilmember . . . accepts a position of employment with the City. . . ." Young asserted further that Stamey was disqualified from seeking or holding office on the basis of Tenn. Code Ann. § 7-51-1501, which provides that "unless otherwise authorized by law or local ordinance, an employee of a municipal government or of a metropolitan government shall not be qualified to run for elected office in the local governing body of such local governmental unit in which the employee is employed." Tenn. Code Ann. § 7-51-1501 (2015). Young requested that the Trial Court "enter declaratory judgment that defendant, E. T. Stamey, was not qualified to appear on the ballot, and that plaintiff, the only qualified candidate appearing thereon, was and is the lawful winner, and is entitled to assume and perform the duties of the office." Young also sought injunctive relief to prevent the Commission and its members "from approving any ballot where an employee of the Town of Clinton seeks or purports to seek election to the city council and likewise, from certifying any candidate elected to the city council who is found or revealed to be an employee of the Town of Clinton."

In January 2019, the Commission filed an answer raising a number of defenses including that it was unaware of Stamey's employment status and that if Stamey were disqualified, the proper remedy would be to declare the election void. Stamey filed his own answer wherein he denied that he was a city employee. In March 2019, the Commission filed a motion for judgment on the pleadings stating, in part: "The Election Commission's role in the challenged election was limited to its ministerial capacity and it is not a necessary party to this civil action. Plaintiff has failed to state a claim against the Election Commission." Along with its motion for judgment on the pleadings, the Commission filed a "Statement of Undisputed Material Facts pursuant to Tenn. R. Civ. P. 12.03 and 56." The statement read as follows:

-2-

1. Mr. Young and Mr. Stamey ran against each other for a seat on the City Council for the Town of Clinton.

2. The election was held on November 6, 2018.

3. Mr. Stamey received a majority of the votes.

4. The Election Commission certified Mr. Stamey as the winner of the election on November 19, 2018.

5. Mr. Young filed his lawsuit on November 21, 2018, alleging that Mr. Stamey was not qualified to run for or hold the Clinton City Council seat because he was an employee of the City of Clinton.

6. Prior to the filing of the above-captioned lawsuit, the Election Commission had no knowledge regarding Mr. Stamey's employer. Moreover, the Election Commission was presented with no information, reliable or otherwise, indicating that Mr. Stamey was in any way ineligible to run for or hold the office which he sought.

7. Prior to the November 6, 2018 election, neither Plaintiff Young nor anyone else filed a complaint or challenge with the Anderson County Election Commission regarding Defendant Stamey's qualifications to hold the City Council position for which he sought and received the majority of the votes.

(Record citations omitted). In March 2019, Stamey filed a motion for summary judgment acknowledging that he had worked for CCS since 2017, but that this did not make him a city employee. Young filed a response to both motions. Young did not dispute any facts contained in Stamey's statement of undisputed material facts. As part of his response, Young filed his Declaration Under Penalty of Perjury asserting that he had informed the Commission of Stamey's job with CCS but was told that the election results would be certified anyway. In his Declaration, Young stated:

1. On or about the 10th day of November, 2018, I was told that defendant, E. T. Stamey, appeared to be an employee of the Clinton City Schools, and that if he was a school department employee, he would be disqualified from being a member of the Clinton City Council. I was also told that there was an Opinion by the Tennessee Attorney General and Reporter specifically addressing the issue in the context of a teacher employed by the Clinton City School Department.

2. On or about the 13th day of November, 2018, I visited Mark Stephens, Administrator of Elections for the Anderson County Election Commission, in his office and informed him that I had heard that Mr. Stamey was employed by the Clinton City Schools and therefore disqualified, according to the previously mentioned Opinion. I also

-3-

expressed my understanding that both a charter provision and a statute established his disqualification.

3. On or about the 16th day of November, 2018, I visited again with Mr. Stephens, and on this occasion I provided him with a copy of Opinion No. 08-72 dated the 31st day of March, 2008, by the Tennessee Attorney General and Reporter. A true and exact copy of the same is attached hereto as an exhibit.

4. Mr. Stephens told me in substance that regardless of the Opinion of the Tennessee Attorney General and Reporter, "We are going to certify the election."

The Attorney General Opinion that Young referenced in his Declaration, Opinion 08-72, reads as follows:

### QUESTION

Given the provisions of the Charter of the City of Clinton and the provisions of Tenn. Code Ann. § 7-51-1501, is a school teacher of the city school system eligible to be a candidate for the city legislative body?

### OPINION

No. Tenn. Code Ann. § 7-51-1501 disqualifies municipal employees from eligibility to serve on the municipality's legislative body unless otherwise authorized by law or local ordinance. The charter and ordinances of the City of Clinton do not authorize such eligibility.

### ANALYSIS

Section 7-51-1501 of the Tennessee Code provides as follows:

[U]nless otherwise authorized by law or local ordinance, an employee of a municipal government or of a metropolitan government shall not be qualified to run for elected office in the local governing body of such local governmental unit in which the employee is employed.

Tenn. Code Ann. § 7-51-1501.

According to the City of Clinton's charter, the city council is the city's legislative body and has the power to establish and administer the

-4-

city's public school system. *See* City of Clinton Charter (1990). Thus, a city school teacher is disqualified from election to Clinton's city council unless some other law or local ordinance authorizes a teacher to run for such an office. Neither the City of Clinton's charter nor any municipal ordinance of the City of Clinton authorizes a city school teacher to run for the city council.

Tenn. Code Ann. § 12-4-101 does not conflict with Tenn. Code Ann. § 7-51-1501. Section 12-4-101 concerns the personal interests of public officials and provides specific standards of conduct for municipal officials who are also municipal employees. Tenn. Code Ann. § 7-51-1501's prohibition is a general disqualification for candidacy. That statute permits a city employee to serve on a city legislative body if such candidacy is "otherwise authorized by law or local ordinance." A city's legislative body may pass an ordinance permitting a city employee to serve on the city's legislative body. Thus, Tenn. Code Ann. §§ 7-51-1501 and 12-4-101 do not conflict.

In April and May 2019, the Trial Court heard Stamey's and the Commission's motions. In May 2019, the Trial Court resolved the case through two separate orders granting the respective motions. In its order granting the Commission's motion for judgment on the pleadings, the Trial Court stated, as relevant:

The only activity the Plaintiff alleges the Defendants, Anderson County Election Commission, took in relation to this cause of action was to certify the election results on November 19, 2018 after the election which took place on November 6th, 2018. This action is solely within the ministerial capacity.

There was no challenge made to the qualifications of E.T. Stamey with the Anderson County Election Commission prior to the election. The Plaintiff never voiced any concerns with Mr. Stamey's qualification until after the election of November 6th, 2018. The Election Commission was never requested and never conducted any type of review of Mr. Stamey's qualifications to be on the ballot. The only action the Plaintiff alleges the Anderson County Election Commission took in relation to this cause of action was to certify the results after the election.

Finding that this action by the Anderson County Election Commission falls solely within its ministerial capacity pursuant to *City of Memphis v. Shelby County Election Com'n*, 146 S.W.3d 531, 536-537 (Tenn. 2004); . . . and *Bivens v. White*, No. E2014-02251-COA-R3-CV, 2015 WL 5444126, at *8 (Tenn. Ct. App. Sept. 16, 2015). For the reasons

stated above the Plaintiff makes no claim upon which relief can be granted against the Anderson County Election Commission and the Motion for Judgment of the Pleadings is granted.

The court will make no additional findings regarding the allegation of the Defendants regarding relief requested by the Plaintiff being inconsistent with T.C.A. §2-17-112 and T.C.A. §2-17-113 due to the fact that such a determination is not warranted by this court at this time, having previously found under separate order dated May 6th 2019, that the Plaintiff is not entitled to relief upon granting the Defendant, E.T. Stamey's Motion for Summary Judgment being granted.

The Trial Court granted Stamey's motion for summary judgment and denied the remainder of the Commission's motion as moot, as well. The Trial Court incorporated its oral ruling into its written order. In its oral ruling, the Trial Court stated, in part:

Article VIII[1] of the Charter says that the City shall, by ordinance, have the power to establish, control, administer, and manage public schools for its citizens. And then subsection B of Article VIII says, establish a board of education or other such boards and offices as it may deem necessary for a City school system. So Article VIII shows that the City of Clinton did choose, as was its right as a municipality, to form a City school system. It, also, acknowledges that they are forming a school board. Now, under the ordinances, Title 2 deals with the school board elects to maintain a school system under 2-101. 2-106 governs the formation of the board of education. Once that is done, once the City chooses to form a municipal school system, and, therefore, establishes its school board, Tennessee Code Annotated 49-2-203 decides and declares what powers that that school board has. Whether the Charter -- it goes on to say, that the City is going to manage, that power is vested by state law with the school board. All right. In my notes I have a note that at this point I want to note that that 49-2-203 statute that sets forth what are the duties and the powers of the school board are the same as it would be for any county school system. Why is that important? That's important because the Court's review of case law. So I want to lay that foundation. So now we are going to look at the case law.

This is the Putnam County Education Association versus Putnam Commission, and it dealt with a disagreement between the county school board and the county commission regarding the budget for schools. And I'm going to read several sections from this case as well. In its holding, the court found that the supervision and control of the schools of a county, the

---

[1] The Trial Court later would clarify it meant Article VII rather than Article VIII.

-6-

employment of teachers, the fixings of salary, erecting of buildings is vested with the county board of education pursuant to statute 49-2-203. However, the county commission has the duty to levy tax for the needed school funds because it is the only agency clothed with such power. That is the same in this situation with the City of Clinton. They are the only power that can levy tax. So the court in Putnam is acknowledging that there is a monetary connection between the county and the county school system. The case at hand, the Putnam County case, had to do with the limitation of power to exercise a line-item veto, but the court went on to say that the case requires an understanding that a local school system is separate from the county government, and noted back to the 1926 case of Boles, holding that our courts have long recognized the separation of powers of the two entities. It, also, requires an understanding that while a county government controls funding, the local board of education has exclusive control over many operational aspects of educational policy. The two entities have separate origins, functions, and management. The separate origin of each is succinctly explained in this other case, which we don't need to go into.

***

I am aware that this is in opposition to the 20[0]8 Attorney General's opinion that was filed as part of this case. However, I want to note several things. One, the Attorney General's opinion is not binding on this Court. I have reviewed the Attorney General's opinion and find that it did not take into account the state law governing municipal school systems under Title 49 and the statutes that I have previously discussed. I, also, found that it did not take into account the powers and duties that are vested with the city school system under 49-2-203. And that, also, did not take into account the history of the case law holding that school boards are separate and distinct from their local governing bodies. Therefore, this Court issues its ruling. I am aware it's in opposition of that Attorney General's opinion, but the Court finds, as a matter of law, reviewing the statutes, as well as the case law, that Mr. Stamey is an employee of Clinton City Schools and not an employee of the City of Clinton. And as such, the statute governing the alleged ineligibility to hold the Clinton City Council position, 7-51-1501, does not apply in this case. Summary judgment is granted to Mr. Stamey. And that concludes this matter.

(Format modified). Young timely appealed to this Court.

## Discussion

Although not stated exactly as such, Young raises the following two issues on appeal: 1) whether the Trial Court erred in declining to hold that the seat Stamey held on the Clinton City Council became vacant when he accepted a job with CCS and that Stamey was disqualified from appearing on the ballot for that seat; and, 2) whether the Trial Court erred in granting the Commission's motion for judgment on the pleadings, or, if converted, motion for summary judgment, on grounds that the Commission acted solely in its ministerial capacity. The Commission raises its own separate issue of whether the Trial Court's judgment should be affirmed on alternative grounds, namely that the Commission was not a necessary party to the election challenge and that the relief requested by Young is inconsistent with Tennessee law.

Stamey filed a motion for summary judgment, which was granted. As our Supreme Court has instructed regarding the standard of review on motions for summary judgment:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> \*\*\*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is

appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

For its part, the Commission filed a motion for judgment on the pleadings, which was granted. "[A] motion for judgment on the pleadings is 'in effect a motion to dismiss for failure to state a claim upon which relief can be granted.'" *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011) (citations omitted). Our Supreme Court has instructed:

In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion.

*McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). In addition, "[c]onclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *Id*.

*Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004). "We should uphold granting the motion only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). Our standard of review is *de novo* with no presumption of correctness as to the Trial Court's decision. *Id*.

We first address whether the Trial Court erred in declining to hold that the seat Stamey held on the Clinton City Council became vacant when he accepted a job with CCS and that Stamey was disqualified from appearing on the ballot for that seat. A key statute relied upon by Young is Tenn. Code Ann. § 7-51-1501, which provides in full:

> Notwithstanding any county, municipal, metropolitan, or other local governmental charter to the contrary, and notwithstanding any resolution or ordinance adopted by any such county, municipality or other local governmental unit to the contrary, every employee of every such local governmental unit shall enjoy the same rights of other citizens of Tennessee to be a candidate for any state or local political office, the right to participate in political activities by supporting or opposing political parties, political candidates, and petitions to governmental entities; provided, further, the city, county, municipal, metropolitan or other local government is not required to pay the employee's salary for work not performed for the governmental entity; and provided, further, that <u>unless otherwise authorized by law or local ordinance, an employee of a municipal government or of a metropolitan government shall not be qualified to run for elected office in the local governing body of such local governmental unit in which the employee is employed.</u>

Tenn. Code Ann. § 7-51-1501 (2015) (emphasis added). Young also cites Article I, § 13, of the Charter for the Town of Clinton, Tennessee, which provides, as relevant, that "[a] vacancy shall exist if the Mayor or a Councilmember . . . accepts a position of employment with the City. . . ." In addition, Young cites to certain statutes that in his view reveal that municipalities retain control over their own school systems. One such statute provides that "[t]he board of each municipality voting for and collecting the tax provided for in § 49-2-401 shall have exclusive control and management over such common schools." Tenn. Code Ann. § 49-2-402 (2016). As to what constitutes a board, "unless the context otherwise requires . . . 'Board,' 'local board,' or 'local board of education' means the board of education that manages and controls the respective local

-10-

public school system." Tenn. Code Ann. § 49-1-103(1) (2016). In his reply brief, Young argues thusly:

> Obviously, "the board" of a "municipality" is its chief governing body, here, the Board of Mayor and Councilmembers, not the school board. Likewise, the only governing body of a municipality authorized to set tax rates, vote for and collect any kind of tax, including a school tax, is the city council or other chief governmental body. School boards, on the other hand, have no power of taxation whatsoever, and their annual budgets require approval, appropriation and tax ordinances or resolutions by the municipality.

Summarizing his position, Young contends that "[t]he Clinton City School Board and Clinton Board of Mayor and Councilmembers are separate governing bodies of the same municipal corporation, and as an employee of the Clinton City School System, Mr. Stamey is an employee of the municipal corporation."

In response, Stamey argues that CCS and Clinton are distinct entities notwithstanding the fact that CCS depends on Clinton for its budget. Stamey asserts that in every other respect, CCS effectively is autonomous. In his brief, Stamey argues:

> In practice, it is nonsensical for Mr. Stamey to be considered a city employee. If Mr. Stamey were to engage in misconduct, the City Council would have no mechanism for his discipline or removal. The City Council does not have the power to make line-item changes to CCS's budget to harm or enrich Mr. Stamey. The decision about his employment and the conditions thereof rests with the director of schools. That director of schools is employed by virtue of a contract with the Board of Education, not the City. To the extent that [CCS Director of Schools] Ms. [Kelly] Johnson needs oversight in her employment, that oversight does not come from the City of Clinton; rather, it comes from the Board of Education. Absent the ability to control, hire, or terminate, the City of Clinton cannot be found to be Mr. Stamey's employer.

(Citation omitted). Stamey relies heavily on *Putnam County Educ. Ass'n v. Putnam County Com'n*, a Tennessee Court of Appeals case articulating the distinct natures of county governments and county school systems. While the present case involves a municipal school system, Stamey argues the same reasoning applies. In *Putnam County Educ. Ass'n*, this Court discussed as follows:

-11-

The limitation on a county commission's right to exercise a line-item veto requires an understanding that the local school systems are separate from the county governments. *Cloudia Hill v. McNairy County*, No. 03-1219-T, 2004 WL 187314, at *1 (W.D. Tenn. Jan. 15, 2004); *see also Boles*, 280 S.W. 27 (Tenn. 1926) (holding that our courts have long recognized the separation of the powers of the two entities). It also requires an understanding that while the county government controls funding, "the local board of education has exclusive control over many operational aspects of education policy." *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221-22 (Tenn. 1988). The two entities have separate origins, functions, and management. The separate origin of each is succinctly explained in *Rollins v. Wilson County Government*, 967 F.Supp. 990, 996 (M.D. Tenn. 1997).

> [P]ublic school systems within the state of Tennessee were established by the Constitution of the State of Tennessee. *See* Art. 11, § 12, Tenn. Const. Although counties were also established as arms of state government, counties were statutorily created by the state legislature, rather than by the state constitution. *State v. Stine*, 200 Tenn. 561, 292 S.W.2d 771, 772 (1956); *Bayless v. Knox County*, 199 Tenn. 268, 286 S.W.2d 579, 587 (1955).

*Rollins*, 967 F.Supp. at 996. Counties and school systems perform separate functions. *Hill v. McNairy County*, 2004 WL 187314, at *2. The fact that there are financial connections between a local school system and local government does not detract from the essentially separate functions of these two entities. *Id.*

> A county is a corporation run by its local officials. *See, e.g. State v. Read*, 152 Tenn. 442, 446-47, 278 S.W. 71 (Tenn. 1925). The schools of a county, on the other hand, are operated and maintained through the agency of the county board of education and a superintendent. *Reed v. Rhea County*, 189 Tenn. 247, 225 S.W.2d 49, 50 (1949). The school board and superintendent are not employees of the county government, but rather perform separate and distinct functions. Affidavit of James L. Francis. *See also, State ex rel. Boles v. Groce*, 152 Tenn. 566, 280 S.W. 27, 28 (1926) (discussing the separation of powers between a county school board and county government officials); *Morgan County Bd.*

-12-

*of Commissioners, et al. v. Morgan County Bd. of Ed.*, 1994 WL 111457, *3-*4 (Tenn. App. 1994) (describing county school board and county commission as two separate entities with separate powers).

*Hill v. McNairy County*, 2004 WL 187314, at *2 (citing *Rollins v. Wilson County Government*, 154 F.3d 626, 629-630 (6th Cir. 1998) (quoting the District Court in *Rollins v. Wilson County Government*, 967 F.Supp. 996-97 (some citations omitted in the original)).

*Putnam County Educ. Ass'n v. Putnam County Com'n*, No. M2003-03031-COA-R3-CV, 2005 WL 1812624, at *4-5 (Tenn. Ct. App. Aug. 1, 2005) (footnote omitted), *no appl. perm. appeal filed*.

Stamey cites also to Tenn. Code Ann. § 49-2-127 for the proposition that municipal school systems are entities empowered along the same lines as county school systems. Tenn. Code Ann. § 49-2-127 provides, as pertinent:

The initial board of education shall plan and manage the formation of the new city school system and, subsequently, shall manage and operate the system when student instruction commences. <u>The board shall possess all powers and duties granted to or required of boards of education as set forth by § 49-2-203 or other statute</u>, including, but not limited to, employment of a full-time director of schools and other personnel; and construction, acquisition, lease, or modification of buildings and facilities.

Tenn. Code Ann. § 49-2-127(c) (2016) (emphasis added).

We note that our research yielded one opinion wherein our Supreme Court arguably referred to city school employees as city employees. In a case dealing with the pension fallout from the abolition of Knoxville's city school system, our Supreme Court observed that "the city [of Knoxville] maintained a local pension plan for all of its employees, including employees of the City School System." *Knox County v. City of Knoxville*, 786 S.W.2d 936, 937 (Tenn. 1990). The High Court went on to conclude that "[t]he members of the City Pension System are entitled to all the benefits provided for them in accordance with their contractual relationship with the City of Knoxville under the provisions of the pension act." *Id.* at 941.

We do not believe this opinion answers the question before us, however. In *Knox County*, there was no question but that the employees at issue were in the pension plan. Our Supreme Court did not address how or why these city school employees were city

-13-

employees; it simply referred to them as such.  Given this, we cannot conclude that our Supreme Court has ruled on whether municipal school board employees are city employees.  This being so, our inquiry continues.

In determining whether Stamey is a Clinton city employee, we consider CCS's relationship to Clinton in light of the aforementioned statutes and caselaw.  Young points out correctly that *Putnam County Educ. Ass'n* is an unpublished case, thus is not binding.  We find it persuasive, nevertheless.  This is so even though that case involved a county rather than municipal school system.  The same reasoning applies.  To regard CCS and Clinton as two conjoined entities of the same municipal body would be to ignore the statutory framework reflecting the relative independence of school boards, including municipal school boards.  Municipal boards of education "shall manage and operate the system" and "shall possess all powers and duties granted to or required of boards of education as set forth by § 49-2-203 or other statute. . . ."  Tenn. Code Ann. § 49-2-127(c) (2016).  Tenn. Code Ann. § 49-2-203 sets out the range of duties and powers for local boards of education.  Municipal school boards are not, therefore, mere appendages of cities.  They enjoy a high degree of autonomy.  Like county schools relative to county governments, they "perform separate functions."  *Putnam County Educ. Ass'n*, 2005 WL 1812624, at *5.

Young's reliance on Tenn. Code Ann. § 49-2-402 and its provision regarding exclusive control and management by boards of municipalities collecting tax for common schools is, in our view, misplaced.  As stated in *Putnam County Educ. Ass'n*, "[t]he fact that there are financial connections between a local school system and local government does not detract from the essentially separate functions of these two entities."  2005 WL 1812624, at *5 (footnote omitted).  Young is correct that CCS depends on Clinton for its budget and funding.  To that extent, Clinton "manages" or "controls" CCS.  However, Clinton does not actually administer CCS.  Clinton provides funding and then CCS manages its own affairs.  Despite being a creation of Clinton, CCS is autonomous in its day-to-day functions.  For instance, Stamey was hired by the CCS Director of schools, not the Clinton City Council.  Stamey is not accountable to the Clinton City Council.  The Clinton City Council lacks authority to discipline or fire Stamey.  It would be an odd employment relationship indeed were Stamey to be a city employee when the city can do nothing about him.  Were Stamey a member of the CCS Board of Education, this case likely would have a different result.  However, Stamey is a Clinton city councilman, and in that role, he has no direct input on the management of CCS.

As was the Trial Court, we are unpersuaded by Tennessee Attorney General Opinion 08-72, which addressed a different scenario, and also failed to grasp the autonomy of the municipal school system.  Given the caselaw explaining the separate nature of county school systems as distinct from county governments, the logic of

-14-

analogizing that to municipal school boards, and a statutory framework that empowers municipal school boards in a manner akin to any other local board of education, we hold that Stamey is not a city employee. Rather, Stamey is a city councilman for Clinton, and he works separately for CCS. Tenn. Code Ann. § 7-51-1501 does not bar him from serving on the city council under these circumstances.

Even if we err in our determination and Stamey is, in fact, a city employee, another basis would lead to affirmance of the Trial Court's judgment. One statute, Tenn. Code Ann. § 49-5-301, specifically permits noninstructional public school personnel like Stamey to run for public office. This statute provides: "Notwithstanding any law except §§ 8-23-201 and 49-2-203 to the contrary, noninstructional personnel employed by any public school in this state shall be eligible to run for public office." Tenn. Code Ann. § 49-5-301 (2016). Neither Tenn. Code Ann. § 8-23-201, which deals with overtime and related matters, nor Tenn. Code Ann. § 49-2-203, insofar as it renders members of local boards of education ineligible for election as teacher or other compensated position under the board, have any application here.

Young, unbowed, argues that Tenn. Code Ann. § 49-5-301 "is superceded by both the more recent and specific statute [Tenn. Code Ann. § 7-51-1501] as well as by the more recent and specific charter provision itself." We believe Young has it backwards. Tenn. Code Ann. § 7-51-1501 (2015) contains the caveat "unless otherwise authorized by law or local ordinance." Tenn. Code Ann. § 49-5-301 is an example of "otherwise" authorizing law. Young's reliance on the Clinton City Charter is misplaced, as well. As our Supreme Court has stated regarding conflicts between city charters and statutes, "[e]ven if such a requirement was in the charter . . . the above Code Section, which is a general law of the State, would take precedence over what is contained in the City charter." *Walldorf v. City of Chattanooga*, 237 S.W.2d 939, 941 (Tenn. 1951). Additionally, Attorney General Opinion 08-72 dealt with a school teacher and not "noninstructional personnel employed by any public school in this state. . ." as is Stamey. The clear intent of our General Assembly in enacting Tenn. Code Ann. § 49-5-301 was to treat noninstructional personnel differently from instructional personnel as to their being "eligible to run for public office."

As did the Trial Court, we find no genuine issues of material fact for trial. For the reasons stated, Stamey is entitled to judgment as a matter of law. We affirm the Trial Court's grant of summary judgment in favor of Stamey.

The next and final issue we address is whether the Trial Court erred in granting the Commission's motion for judgment on the pleadings, or, if converted, motion for summary judgment, on grounds that the Commission acted solely in its ministerial capacity. Young contends that the Commission's motion should be regarded as one for

summary judgment because matters outside the pleadings were presented in support of it. As we will discuss, the outcome is the same under either standard.

"In discharging their statutory duties, county election commissions perform both ministerial and discretionary functions." *McFarland v. Pemberton*, 530 S.W.3d 76, 94 (Tenn. 2017). The Commission argues that certifying election results falls under its ministerial functions. According to statute, "[a]fter completing the comparison of the returns, the county election commission shall make and certify the official tabulation and certification of results, showing both precinct and county totals. . . ." Tenn. Code Ann. § 2-8-105 (2014). This leaves no flexibility as to what the Commission must do with respect to certification. In another case where an allegation of disqualification was made after voting had commenced, we stated:

> The defendants filed motions to dismiss. The MCEC argued that its role was limited to a ministerial capacity and that it was statutorily required to place qualified candidates on the ballot, tabulate the votes cast, and certify the results. The MCEC claimed that it did not receive information concerning White's alleged disqualification until after early voting had commenced. The commissioners argued that they were not individually liable because they acted in their official capacity as commissioners.
>
> ***
>
> While not raised as an issue on appeal by Bivens, the MCEC argues that the trial court did not err in dismissing the complaint against it and its commissioners. We agree with the MCEC. The MCEC operates in a ministerial capacity and does not have the discretion to remove candidates from the ballot without statutory authority. Tenn. Code Ann. § 2-5-204; *see City of Memphis v. Shelby Cnty. Election Comm'n*, 146 S.W.3d 531, 535 (Tenn. 2004) (discussing the ministerial role of an election commission);. . . White never filed a request to withdraw from the election. Tenn. Code Ann. § 2-5204(b). Accordingly, we affirm the dismissal of the MCEC and its commissioners as parties to this suit.

*Bivens v. White*, No. E2014-02251-COA-R3-CV, 2015 WL 5444126, at *2, 8 (Tenn. Ct. App. Sept. 16, 2015) (footnote omitted), *Rule 11 appl. perm. appeal denied Jan. 14, 2016.*

Here, Young's allegation of Stamey's disqualification occurred after the election was over. The Commission was legally bound in its ministerial capacity to certify the election results. Our General Assembly has not seen fit to bestow upon election

-16-

commissions the discretion to refrain from certifying election winners on the basis of tardy challenges to a candidate's qualifications. This is true irrespective of when—after the election—the Commission received notice of a potential issue with Stamey's qualifications. Whether couched as a motion for summary judgment or judgment on the pleadings, Young has failed to state a claim against the Commission.

We find it unnecessary to address the Commission's issue of whether additional grounds would sustain the Trial Court's judgment. Any discussion of remedy is moot as a result of our conclusion that Stamey is not disqualified from serving on the city council and his seat never became vacant. We affirm the judgment of the Trial Court in its entirety.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Ronald C. Young, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-17-